Succession of Justus.

---

No. 11,038.

SUCCESSION OF MRS. WILHELMINA JUSTUS.

The right of a surviving husband, left in necessitous circumstances by a wife who dies rich, and without leaving issue, to *take* the marital fourth in full property from 'her' succession is a personal and optional right, which remains inchoate and does not rest absolutely in him, unless first accepted by him.

It is not an inheritance and the survivor is not an heir.

Such right does not pass to his heirs, where he has not urged it himself.

It is a bounty, or charity, which can well be assimilated to that in cases of necessitous widows, or minors, entitled to claim $1000 in preference to creditors.

It may also be likened to a *donation inter vivos*, which, unless accepted by the donee himself, or his agent, remains without effect.

In such homestead cases, it is settled that the right to *demand and receive* it is a personal right and not an inheritance, and that it does not pass by the death of the widow to her major heirs, unless the bounty or charity had been previously demanded and reduced to possession.

When it was allowed to minors, it was not because they inherited it from their mother, but because they were entitled to it in their own rights.

The ruling in the Piffet case, 39 An. 563, h as no bearing, as there the husband had claimed before his death and his heirs merely continued the prosecution.

Permitting the heirs of the deceased husband to take the fourth, where he has not claimed it, would not be a furtherance of the humane objects which the law has in view, but doing violence to the spirit and letter of the provision.

*Scire leges non est verba earum tenere, sed vim ac potestatem capere.*

| 44 | 721 |
|----|-----|
| 50 | 64 |
| 50 | 1229 |

| 44 | 721 |
|----|-----|
| 52 | 872 |

| 44 | 721 |
|-----|-----|
| 108 | 544 |
| 108 | 547 |

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*Buck, Dinkelspiel & Hart* for Appellants:

1. The marital portion is but a right to be exercised or not, at the option of the husband or wife entitled to same. R. C. C. 2382.

2. It is not an inheritance, because not given in all cases. 3 An. 713.

3. It is an option to be exercised or not, as desired by the party entitled thereto. 39 An. 563.

---

*H. Heidenhain* for Appellees:

1. The marital fourth is an inheritance. C. C. 2382; Dunbar Heirs, 5 An. 159; Connor vs. Connor, 10 An. 451; Gee vs. Thompson, 11 An. 657.

2. The failure of the surviving spouse to make a "demand" does not extinguish the right of the heirs. C. C. 943, 944, 945, etc.; C. C. 872, etc.

46

3. The existence of a marriage contract does not interfere with the claim to the marital fourth. C. C. 1887.

4. The demand is properly made when made under Article 1630 of the Civil Code.

---

The opinion of the court was delivered by

BERMUDEZ, C. J.　In this matter the heirs of F. R. Justus sue to recover the *marital fourth* which, they aver, their father was entitled to *take* from the succession of the deceased, who was his wife.

Mrs. Justus died *rich*, on the 27th of September, 1891, and Mr. Justus was left by her in necessitous circumstances.　He died seven days after his wife, without having claimed that fourth.

Mrs. Justus left a will by which she bequeathed him a pension in the shape of a legacy of $75 per month and some movable property.

The contention is that the marital fourth provided for by Art. R. C. C. 2382 accrued as an *inheritance* from the succession of the wife to the husband, which, at the moment of her death, vested in him as in an *heir*, and passed by his demise to his children, as heirs to his estate, although he did not claim that portion during his lifetime, which was not a condition *sine qua non*.

This is a fallacy, resting on the assumption that the husband was *an heir*.　Hence, the confusion of ideas on the subject and the cause of error committed.

The article in question is not found under the title of *Successions*, but under that of *Marriage Contracts*, in the code.

The spirit which inspired the legislation originally, in Rome, in France, and in Spain, and which dictated its insertion in the body of laws which govern Louisiana, was that, where husband or wife dies *rich*, without issue, leaving the survivor in a state of penury, the latter shall have the right to *take* from the succession of the deceased one-fourth of its residue, in full property, after payment of the debts, in order that he or she may not, after a life of ease and comfort, be suddenly thrown into abject poverty.　The law does not say that the survivor shall *inherit* one-fourth; but that he or she will have the *right to take*, that is, if he or she choose, out of the succession, that portion of the estate, when liquidated.

Read by the light of the spirit which animated the law giver, that language clearly means that the survivor has the right to *take* out of the succession that portion of it concurrently with the heirs. The *taking* necessarily implies an antecedent act, an assertion of the

right or privilege, and, in case of opposition, a revendication of it through the intervention of the courts.

The code says that there are *three* kinds of successions, the *testamentary*, the *legal* and the *irregular*, and three kinds of heirs which correspond with the three species of successions, the *testamentary* or instituted heirs, the *legal* heirs or heirs of the blood, and the *irregular* heirs. R. C. C. 875 to 879.

Our code contains general rules under three different corresponding titles for the settlement of such successions accruing to such heirs. R. C. C. 886, 915, and others.

*Besides*, a succession is the transmission of the rights and obligations of the deceased *to the heir*. R. C. C., 871-72-73.

*Per contra*, an heir is the person who is called to the inheritance of a deceased pereon, acquiring the rights and incurring the obligations of such party. R. C. C. 884.

An heir is defined to be: " Celui qui recueille, à titre successif, tous les droits actifs et passifs qu'avait un défunt au moment de sa mort.

*Successor in universum jus et personam defuncti.* Dict. Droit Civil, Verbo *Héritier*, Vol. IV, p. 67.

Clearly, neither the rights which Mrs. Justus possessed, nor the obligations which burdened her, vested in Mr. Justus, who, under no eventuality, could, by asking the fourth, have become responsible for any of her debts or liabilities.

The claim to the *marital fourth* is one against, and not one *by*, the succession, which is not here a plaintiff, but a defendant.

Surely Mr. Justus was not a *testamentary* heir; he was a simple legatee, and the legacy had never been accepted and claimed. He was not a *legal* heir, or legitimate heir, or heir of the *blood;* he was an utter stranger to his wife, and even had he been related, she had a right to dispose as she pleased of her estate, and she did it. He could not complain.

He was not an *irregular* heir, because he was not mentioned as an heir under the title of *irregular* successions.

Of course, a husband may inherit from his wife as an irregular heir; but it must be under circumstances which are not such as are presented here—that is, where the wife dies intestate, leaving no lawful descendants, or acknowledged natural issue or lawful ascendants, or like collateral relations.

In the case of Gee vs. Thompson, 11 An. 659, in which the right to the marital fourth was involved, and in which it had been asserted that the wife was an *heir*, the then court, after full deliberation, discriminating between the rights of heirs proper and of surviving spouses, claiming the marital fourth, said: "In regard to successions it interests the public order that the instant a person dies it should be known what persons should succeed to his effects. Hence, those provisions of law were established under the head of successions, declaring who shall inherit, and casting the inheritance upon the heir so designated, even unknown to himself. The person upon whom the inheritance is by law conferred, and who is called the heir, is so different from the surviving husband and wife claiming the marital fourth that such demand, like a demand for a legacy, must be made upon the *heir*. The heir, on the contrary, is not obliged to apply to a court of justice in order to take possession as proprietor." It adds that the articles 918 and 2359 of the then code (1825) were intended to apply to different classes of cases: "The one to provide an heir to an entire succession, the other to relieve the surviving husband or wife when in want."

Indeed, saying that the husband or wife is an heir in this case would be to add another to the *three* classes of heirs enumerated by the code. This can not be done.

The right conferred by the article is in the nature of a charity or bounty, in favor of the surviving consort left in penurious circumstances, which, to vest in him or her, must at least have been claimed when it could be done.

It is a personal and optional right, which remains *inchoate* until accepted, and which lapses and dies away, and does not pass to the heirs of the survivor at his death, when not previously accepted by him or her.

The text reads: Quarta DATUR in honorem preterite matrimonii. The fourth is *given* in honor of the past marriage, that the survivor be retained in the previous accustomed rank and condition. It is a *gift*.

It is not a *donation by the deceased;* but one by the sovereign acting in the place of the unwilling, hindered, forgetful or ignorant defunct spouse. It may be likened to a donation *inter vivos*, which, to be binding, must be accepted in precise terms by the donee himself or his agent, and which if not so accepted can be accepted neither

by his creditors *nor his heirs, and remains without effect.* R. C. C. 1540, 1543, 1544.

It may be assimilated to the charity or bounty extended, or conferred on the necessitous widow or minor heirs, by the Act of 1852, now Art. 3252, R. C. C., with this difference, that the marital fourth is taken from a solvent succession or the heirs; while the $1000 are allowed in insolvent successions in preference to creditors. Both are laws in derogation of common right.

Under the provisions of the homestead laws, it has been held that the right was a *personal* one, depending on the condition of the person in whose favor it is granted, and not a right or inheritance that vests irrevocably in full property in such person and forms part of his succession, which descends to his heirs. It is a right which must be asserted and reduced to possession, be *demanded and received*, before it can vest in the party. Succession of Robertson, 28 An. 832.

In the subsequent kindred case of the succession of Durken, 30 An. 669, in which the major heirs of a necessitous widow claimed the $1000, which she had not *demanded*, the court held that they could not receive.

The same doctrine was reiterated and applied in the posterior germane case of the succession of Vives, 35. An. 375.

The invoked decision of this court in the succession of Piffet, 39 An. 563, has no bearing, as the husband had accepted the gift and made his claim before his death, and his heirs merely continued or prosecuted it.

By his acceptance of the bounty or charity, the right to *take* the fourth had vested in him, and so had passed to his heirs, who were recognized entitled to it in his stead.

Neither does the French case apply, referred to in Merlin, Vo. " Conjoint Pauvre," Vol. 10, p. 447, in 1732.

The fourth had been claimed by the surviving wife, to whom it had not been allowed, but she dying *pendente lite* it appears to have gone to her heirs. However, as she had accepted the legal gift, and as by that act the title to it had vested in her, it could be claimed by her heirs, and it was allowed them.

The husband here was not bound to accept the gift, and he did not claim it. He was, perhaps, satisfied with the testamentary disposition of his wife in his favor, which exceeded, as an income, the revenue which the net fourth would have yielded; or was too proud to

take either charity, or considered that what was intended for *him* should not pass to others.

Permitting the heirs in this instance to benefit by the marital fourth claimed would surely not be a furtherance of the humane objects of the law giver, but doing violence to the spirit and letter of the provision. As well should it be allowed to creditors in default of heirs.

*Scire leges, non est verba earum tenere, sed vim ac potestatem capere.*

It is therefore ordered and decreed that the judgment appealed from be reversed, and it is now adjudged that the claim of the plaintiffs, as heirs of F. R. Justus, be rejected, with judgment in favor of the defendant, and that plaintiffs pay costs in both courts.