No. 14,315.

LAURE RICHARD vs. JOSEPH LAZARD ET AL. MARY LAZARD, THIRD OPPONENT.

SYLLABUS.

1. To discover the true meaning of a law, we must consider its reason and spirit, the cause which induced the law-makers to enact it, and the mischief which it seeks to prevent or remedy. However general may be the terms in which it may be expressed it only extends to those things or persons it appears the law-making power intended it to reach.

2. The General Assembly in enacting the statute of 1852 (Article 3252 C. C ), whereby the widow left in necessitous circumstances is entitled to recover one thousand dollars from her husband's succession, to be paid by preference out of the estate, never contemplated or intended that this assistance should

be extended adversely to his creditors or to his heirs at law, to an unfaithful wife who abandoned her husband.

IN RE Laure Richard, Applying for *Certiorari,* or Writ of Review, to the Court of Appeal, Fifth Circuit, State of Louisiana.

*Edward N. Pugh* and *Walter Lemonn,* for Applicant.

*R. McCulloh,* for Third Opponent, Respondent.

The opinion of the court was delivered by

NICHOLLS, C. J.   The plaintiff, Laure Richard, as holder and owner of a promissory note executed by Joseph Lazard and Mary Lazard, his wife, payable to their own order and by them endorsed and secured by special mortgage on certain property in the town of Donaldsonville, caused executory process to issue upon the note, praying that the property mortgaged be seized and sold after legal notice to the parties.

Joseph Lazard, the maker of the note, was at that time dead. There were no children issue of his marriage with Mary Lazard. The parties with whom the proceedings were contradictorily carried on by the plaintiff, were the heirs of Joseph Lazard and Mary Lazard, the widow.

The latter filed a petition of third opposition in which, as widow of Joseph Lazard, she averred that her husband had recently died, leaving her in necessitous circumstances, and not possessed in her own right of property to the amount of one thousand dollars, that in fact she had no property whatever; that she was entitled therefore to demand and receive from his succession the sum of one thousand dollars; that as surviving widow she had a lien and privilege on all the property of the deceased, which outranked all and every other privilege except the vendor's privilege, if any, and expenses incurred in settling the property; that the privilege held by her primed the mortgage enforced by the plaintiff; that the property mortgaged was acquired during her marriage with the deceased and was his only property. She prayed that her privilege, with its rank, be recognized and she be paid by preference.

The seizing creditor answered the opposition, pleading first the general issue; further answering she especially denied that third oppo-

nent was such a widow as was contemplated by law or that she was left by Joseph Lazard, deceased, in necessitous circumstances, she having been separated from him several years prior to his death.

Plaintiff, in executory proceedings, caused interrogatories to be propounded to Mrs. Fred. Becker, under commission, which disclosed upon their face that the claim set up in the third opposition would be opposed upon the ground that third opponent had left her husband and lived in open concubinage and adultery with another man. The interrogatories were crossed under reservation of objections that they were inadmissible and irrelevant, vague and leading. The testimony taken under them was admitted on the trial of the case over defendant's objection, and she reserved a bill of exceptions.

The District Court rejected the third opposition and opponent appealed to the Court of Appeals. That court reversed the judgment appealed from and sustained the third opposition. After an unsuccessful attempt to obtain a rehearing, the cause has been brought up for review to this court, under a writ of *certiorari* and writ of review.

The testimony adduced established the fact that third opponent refused to return to her husband after leaving him, and lived in open concubinage with another man. We think the testimony was relevant and admissible. The pleadings did not expressly charge adultery, but the interrogatories propounded, which were crossed by defendant, disclosed fully the nature of the defense which would be set up against the third opponent's pretensions. She was not taken by surprise.

The claim to a privilege is based upon the last clause of Article 3252 of the Civil Code, which declares that whenever the widow or minor children of a deceased person shall be left in necessitous circumstances, and do not possess in their own right property to the amount of one thousand dollars, the widow or the legal representatives of the children shall be entitled to demand and receive from the succession of the deceased husband, or father, a sum which, added to that owned by them or either of them in their own right, will make up the sum of one thousand dollars, and which amount shall be paid in preference to all other debts except those for the vendor's privilege and expenses incurred in settling the property."

The fact that the opponent is without means is conceded.

It is contended before us that the abandonment by a wife of her

husband, and her living in concubinage and adultery with another man, are not grounds upon which courts are authorized to deny to her the benefits of the law as embodied in Article 3252 of the Code; that the law is clear and free from ambiguity and the letter is not to be disregarded under the pretext of following the spirit; that opponent is unquestionably the "widow" of the deceased as its signification is "a woman who has lost her husband by death;" that the terms of the law are general and absolute and the courts are not warranted in placing a limitation upon them or affixing conditions when the law-makers have not affixed them; that the law is plain and does not admit of construction. As supporting his position, counsel refer us to (Succession of Liddell, 22 Ann. 9; Gee vs. Thompson, 11 Ann. 657; Succession of Marc, 29 Ann. 413, and Sabelot vs. Populus, 31 Ann. 855.)

Plaintiff, on the other hand, calls our attention to Article 2382 of the Code and the decisions of this court under the same. The article reads: "When the wife has not brought any dowry, or when what she has brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has the right to take out of the succession of the deceased what is called the marital fourth; that is the fourth of the succession in full property, if there be no children, and the same portion in usufruct only when there are but three or a greater number of children, and if there be more than three children the survivor, whether husband or wife, shall receive only a child's share in usufruct, and he is bound to include in this portion what has been left to him as a legacy by the husband or wife who died first."

In Armstrong vs. Steeber, 3 Ann. 713, a wife who had abandoned her husband for several years before his death to live in concubinage with another, claimed the marital fourth. This court said: "The marital fourth was first allowed by the 23rd and 117th Novels of Justinian, and forms the subject of law; 7th, Title 13th of the 6th Partidas. It was established, says Gregorio Lopez *in honorem praeteriti matrimonii* and in order that the widow might *bene et honeste vivere."*

That the case before it did not come within the reason and spirit of the law, nor did it think the letter of it more favorable to plaintiff's pretentions. She had left her husband several years before his death

.to abandon herself to the life of profligacy congenial to her. She did not go near him in his last illness and suffered him to die uncared for .and alone. Her situation was no more affected by his death than that of other abandoned women in the city. He did not, therefore, leave her in necessitous circumstances within the meaning of the Article of the Code on which she relies and has no claim upon his succession.

In Pickens vs. Gillam, 43 Ann. 350, this court would not permit a husband to claim the marital fourth who, in less than two years after .his marriage, had separated from his wife and lived apart from her, who had not been shown to have made the least attempt at reconcilia- ·tion or had made any enquiries about her during seventeen years, who was not with her in her last illness, nor at her funeral. The court .said they were strangers to each other and it was as if they had not been married; that after those many years of unfriendly separation, the deceased did not leave him in necessitous circumstances; that the .marital fourth, under the Roman law, was not allowed when the spouse .claiming it had been wanting in interest, feeling or attachment. That the principle in the jurisprudence of Louisiana prevailed.

The court held there was a broad distinction between a spouse who was at fault and one who was not.

In Succession of Justus, 44 Ann. 724, this court, referring to the marital fourth, declared that it was provided "in order that the sur- viving spouse might not, after a life of ease and comfort, be suddenly thrown into abject poverty," that the text read: *"Quater datur in .honorem preterite matrimonii,"* the fourth was given in honor of the ·past marriage that the survivor be retained in the previous accustomed rank and condition, it was a gift, it was not a donation by the deceased, but one by the sovereigns acting in the place of the unwilling, for- getful, or ignorant defunct spouse; that it might be assimulated to the .charity or bounty extended or conferred on the necessitous widow or minor heirs by the act of 1852, now Article 3252 of the Civil Code, with this difference; that the marital fourth is taken from a solvent succes- ·sion or the heirs, while the $1000 are allowed in insolvent successions in preference to creditors, both are laws in derogation of common right. Referring to the case before it, the court in rejecting the claim for the marital fourth, said that to admit it "would not be in further- .ance of the humane objects of the law-giver, but doing violence to the

spirit and letter of the provision," adding *"Scire legis non est verba earum tenere sed viri ac protestatem capere."*

We have examined the authorities upon which appellees rely. In Gee vs. Thompson (XI Ann. 657), Hannah Gee, a necessitous widow, separated from bed and board by a judgment in her favor from her husband was permitted to take the marital fourth on the ground that the decree of separation had not dissolved the bonds of matrimony. The judgment of separation established that the husband had forcibly expelled and driven her from the common dwelling without any just cause or provocation whatever; that she remained separated from him by reason of his unlawful acts notwithstanding her desire to return; that he defamed her; that his conduct was cruel, excessive and of such a nature and character as to render the living with her husband absolutely insupportable; that the wife was, therefore, driven by him to place herself under the protection of the law and she had not placed herself in a worse position by so doing. This court said: "The law would be a strange one which should hold out rewards to violence and injustice even by its consequences."

In the Succession of Liddell (22nd Ann. 9), the deceased died leaving no children, the widow claimed the right to take one thousand dollars from the succession as a widow in necessitous circumstances. Differently from the facts in the Gee case, the husband had obtained a separation of bed and board from the wife and not the wife from the husband. The evidence showed that the effect of this judgment was done away with by a reconciliation between the parties, and judgment was rendered in her favor from that condition of affairs.

In Succession of Marc, 29th Ann. 412, and in Sabelot vs. Populus, 31st Ann. 855, the widow was permitted to take one thousand dollars from the succession of the husband as a necessitous widow, although the evidence disclosed that husband and wife had held illicit relations together prior to their marriage, the marriage in the former case having taken place about twelve days before the husband's death and in the latter case about eighteen months. The court, for the purposes of the demands of the widow, would not go back of the marriage, and the fact that at the time of the death the parties were living together as husband and wife.

In the 29th Annual case it was said, *arguendo*: "The act of 1852

gives to the widow, who is in necessitous circumstances, the sum mentioned without qualifying her right to receive it by the condition that her previous life should have been blameless, or by limiting its operation to those whose married life should have lasted a specified time. It is argued by one of the opponents that an interpretation of the statute which permits the widow of Marc to partake the beneficence provided by it, would be offensive to our moral sense, and that it could not have been in contemplation of the Legislature to place a woman who had thus disregarded religious and social duty upon the same plane with respectable and bereaved widow, whose condition attracted the regard and provoked the compassion of the law-maker.

It is very certain, however, that the law has not attached qualifications, nor imposed conditions upon the recipients of this legislative bounty, such as we are asked to supply and enforce in the present proceeding. Should we attempt to do so, omitting any mention of our want of authority, we must arrange this description of persons into classes separated from each other by the purity or impurity of their ante-nuptial lives, or by longer or shorter duration of the marriage which preceded the widowhood."

It is obvious that in using the words here quoted, the organ of the court was dealing with the phase of the questions as precisely presented in the particular case then before it, with the knowledge of the disposition which the law-maker had, in several instances, manifested of giving a condoning effect to subsequent marriage, for acts antecedent thereto. The court was of the opinion that under the circumstances of that particular class of cases, both the letter and the spirit of the statute were satisfied.

Counsel of appellee in their brief recognize the propriety of the courts of Louisiana taking particular cases outside of the scope and operation of the provisions of Article 2382 of the Civil Code relative to the marital fourth by reason of special circumstances, but they deny that they have authority to do so in the matter of the provisions of Article 3252, which confers a privilege upon a necessitous widow, though the language of one of these articles no more calls for limitations upon the right conveyed, than does that of the other. They say "the marital fourth comes to us from the Spanish and Roman laws in existence in Louisiana in 1808, when our Code was adopted, with the

Richard vs. Lazard.

construction placed upon it through many years by decisions of courts and the opinions of law writers. It contained its conditions and exceptions. It required the wife to have lived with her husband and to have conducted herself in a virtuous manner, while the wife's privilege, under the Act of 1852, was without parentage in our law, without custom or prior decisions. It was plain and needed no construction. It made no exceptions. They quote extracts from Merlin, cited in the opinion of this court in the Succession of Justus, where that author, 'dwelling on the necessity of some relations existing between the spouses to enable the survivor to recover the marital fourth, says: "In that respect, in addition to the poverty of the spouse, the Noveles 58 and 117 require two conditions; that she may recover the fourth of the succession of the husband, the first an honest marriage; the second that she has always abided with him. From which it is not difficult to judge that the object of the legislator is to conserve the dignity of marriage," and where that author referred approvingly to the result of a particular case where the inquiry was made, "after the marriage did she dwell with her husband? Did she remain near him to the end?" And the answer was: "Not a moment of concord or union."

Counsel of appellant, referring to the Act of 1852, say the enactment of this statute was in line, and had in view the same beneficent purpose, and was prompted by the same motive and duty that led to the passage of Article 2382. They are both laws on the same subject matter and in *pari materia,* both brought about by a desire to relieve the widow in necessitous circumstances. The only difference between the two laws is that one comes into operation when the husband dies rich, leaving the widow in necessitous circumstances, and the other when the husband dies poor, the widow being left in necessitous circumstances. The amount of the bounty varies in the two cases and justly so, where the estate is large the bounty is large; where small the bounty is small. But in both cases the law aims and directs to aid and assist the same helpless party, namely, the faithful wife truly and really "left" in every sense of the word. Our courts in construing the word "left," in respect to "the marital fourth," repeatedly held it to mean that at the time of the death of the husband, the wife must, in point of fact and in truth, be deprived by that death of the means of livelihood; that his death must have caused some sudden change in her condition and

means of living. That this being the judicial meaning attached to that word in that connection prior to the statute of 1852, when the Legislature used the same word and language in the subsequent statute, it was almost a presumption *juris et de jure* that they intended it to carry the same meaning and be received in the same sense. The legislature in passing the Act of 1852 must have had before it the Codal provision touching the marital fourth. The wording used was strikingly similar. In the one case the active tense is used; in the other the passive. True the conditions which must exist in order to call into operation the one law, differ from those which must exist when the other is called into play. But *quoad* the parties to be benefited and the position which they must hold in relation to the deceased the language used is identical, and the party to be benefitted is the same. We are entirely at a loss to see wherein "the two laws are so entirely different as to be distinct." The one law is as plain and as clear in its provisions as the other. If the law in regard to the marital fourth has its conditions and exceptions so has the law granting the widow's thousand. The one has no more or fewer condition than the other. If to construe the one the court felt justified in referring to the old civil jurisprudence in order to determine the spirit of the Codal provisions embodied in Article 2382, is it not equally open to this court, for this court, in order to arrive at the true spirit and meaning of Article 3252, to look into the jurisprudence existing at the date of the passage of the Act of 1852 and which jurisprudence must have been known by the legislators when they adopted the statute. "Counsel refer us to the reasoning of the Supreme Court of Tennessee in the case of Prater vs. Prater (8 S. W. Rep. 364) on a statute involving the same class of legislation, where the court said:

"So the widow to whom the right of homestead enures at the death of her husband must have been a member of the family in a legal sense when he died, otherwise she cannot successfully assert a claim to the homestead in the estate after death. This does not imply that she must in fact and in all instances have been residing with her husband at the time of his death. But if she wilfully and without excuse deserted the family and eloped and lived with an adulterer, or otherwise so demeaned herself that she may neither in law nor in morals require her husband to receive her back again, she is in such case not a

Richard vs. Lazard.

member of the family while he lives and does not become his "widow" in contemplation of the homestead when he dies."

We are of the opinion that the General Assembly in enacting the Act of 1852 had the same beneficent purpose, and was prompted by the same motive that led to the adoption of Article 2382 of the Civil Code. That the two laws cover substantially the same subject matter, though from somewhat different standpoints that they are in *pari materia* brought about by a desire to relieve a wife suddenly deprived by the death of her husband of the means upon which she had relied up to that time to support her, and to retain her for a time at least in her accustomed condition, and that the bounty accorded by the law-maker was in honor of the past marriage. That, therefore, when the law refers to a "wife" it contemplates a wife in fact and not one merely in name, and it is to enable a faithful wife to continue *"bene et honeste vivere."* It certainly does not intend to reward a woman who has disgraced herself and the family into which she was taken. For this court to hold otherwise would, as we said in the Justus case, "not be in furtherance of the humane object of the law, but to do violence to the spirit and letter of its provisions. *Scire legis non est earum tenere sed vim ac protestatem capere."*

To discover the true meaning of a law we must consider its reason and spirit, the causes which induced the law-makers to enact it and the mischief which it seeks to prevent or remedy. However general may be the terms in which it may be expressed, it only extends to those things or persons it appears the law-making power intended it to reach.

In Succession of Bothick, 52 Ann. 1899, we said: "Exceptional cases have frequently to be read out and excluded from broadly written law," because it was so enacted by the legislators, as Marcade says: *"Evidement parce qu'ils se sont preoccupes des cas les plus ordinaires."* (See on this subject State vs. Sonier, recently decided. City vs. Chappius, 105 La. 182; State vs. Keasley, 50 Ann. 761.)

Applying the rule of construction herein announced we are very certain that the General Assembly in enacting the statute of 1852 never contemplated or intended that any assistance should be extended to an unfaithful wife adversely to the creditors of her husband or to his heirs at law.

For the reasons herein assigned, it is ordered, adjudged and decreed

that the judgment of the Court of Appeals herein brought up for review be and the same is hereby annulled, and reversed, and that the judgment of the District Court, which was reversed and annulled by the Court of Appeals, be and the same is reinstated and the same is hereby affirmed.