*999 Statement of the Facts.
NICHOLLS, J.
The following statement of the pleadings are taken from the brief of the plaintiffs:
Plaintiffs, a commercial partnership doing business in the city of New Orleans, obtained from tbe Twenty-Seventh judicial district court for the parish of Assumption, on tbe 12th day of October, 1908, an order for ex-ecutory process, and on tbe same day notices to pay were issued from that court and served by the sheriff of tbe parish of Assumption, upon the defendants, the Sweet Home Company, Limited. On the 15th day of October, 1908, and before tbe writ of seizure and sale bad issued, defendants, tbe Sweet Home Company, Limited, obtained from tbe judge of tbe district court an order of injunction without bond, restraining and prohibiting plaintiffs and tbe sheriff of the parish of Assumption from proceeding further in the execution and carrying out of the order of executory process, and from proceeding to a seizure and sale under the said order of executory process.
Plaintiffs, Milliken & Harwell, thereupon, on the 17th day of October, 1908, obtained an order of provisional seizure from tbe clerk of tbe district court, signed by him in the absence from tbe parish of the district judge, and on the same day and date, to wit, October 17, 1908, the sheriff of the parish of Assumption seized and took into his possession, under said order of provisional seizure, the plantation of the Sweet Home Company, Limited, with its appurtenances, upon which plaintiffs’ mortgage rested.
On October 19, 1908, plaintiffs filed a written motion to set aside the order of injunction obtained by defendants on the 15th day of October, 1908, as having been issued prematurely, and on the same day defendant filed a motion to dissolve the writ of provisional seizure obtained by Milliken & .Harwell.
This motion to set aside the injunction, obtained by defendants having been overruled, plaintiffs, Milliken & Harwell, thereupon filed a rule on defendants, under article 741 of the Code of Practice, to prove the truth’ of the allegations of their petition for injunction, or to show cause why the injunction obtained by them should not be set aside- and dissolved.
Judgments were rendered maintaining the-injunction obtained by defendants, the Sweet Home Company, Limited, and dissolving and setting aside the provisional seizure obtained by Milliken & Harwell.
Plaintiffs appealed suspensively and devolutively from both of said judgments.
Appellees have answered the appeal praying:
“That the judgment, dissolving the provisional seizure, be amended by allowing respondent judgment against plaintiff in the sum of $h<JO for attorney’s fees in procuring said dissolution, and in the further sum of $1,000 for punitory and general damages for the illegal, wanton, and malicious suing out of said provisional seizure, and that in other respects the said judgment be affirmed, and plaintiff and appellant be condemned to pay the costs of both courts. And respondents pray for all general and equitable relief and all necessary orders in the premises.”
The first matter to which we direct our attention is the judgment of the district court dissolving the provisional seizure which issued at plaintiff’s instance. The judge assigned the following reasons for so doing:
“Plaintiffs, being enjoined before the sheriff could levy on and seize the property on which they asserted their mortgage, presented to the clerk of the court, the judge being out of the parish, a petition in which they alleged all the previous proceedings, and that defendants were about to remove the crops of cane on the mortgaged property, thereby diminishing the value thereof and lessening the security of their note to an amount alleged to be $15,000, to-which petition they made oath, and. the clerk of court thereupon, as prayed for, ordered a writ of provisional seizure, under which the sheriff then seized the crops grown hut yet ungathered on the mortgaged property.
“Defendants moved to set aside the order for provisional seizure on the ground that it was *1001 issued without sanction of law, and that the clerk of court and plaintiffs had acted in contempt of court in issuing the writ in the face of the order of injunction arresting the pro.ceedings by executory process. The plaintiffs rely upon the first paragraph of article 285 of Code of Practice, which reads as follows:
“ ‘Provisional seizure may be ordered in the 'following cases: (1) In executory proceedings, when the plaintiff sues on a title importing a .confession of judgment. * * * ’ As an aid in interpreting this provision of law, counsel for plaintiff urged that, although he was unable to find any adjudication by the Supreme 'Court directly, in point, it was to his knowledge that this writ had frequently been used by learned members .of the profession as ancillary to the execution óf a writ of seizure and sale; that as a matter of justice and equity which .could in no manner affect the defendants, as well as a means clearly sanctioned by law and .practice, he was entitled to have the security for his claim preserved in its entirety pending the decision of the opposition and injunction •sued out by the defendants. And in answer to the argument of defendant that the plaintiff ■had mistaken his remedy and should have resorted to a writ of sequestration, counsel for plaintiff contended that to obtain a sequestration it was necessary to charge a fraudulent Intent on the part of defendant, that they could not .swear to a fact, the existence of which 'he did not believe, and that he was entitled to have the status of the property maintained as it was when he secured his order for ex-ecutory process, although the removal of the .crop was a matter of necessity for its preservation, and its removal was not made for the purposes of defeating plaintiffs’ claim or any part thereof.
“Defendants contend that the first paragraph .of article 285, Code Prac., means nothing more than the seizure which is levied by the sheriff under the writ of seizure and sale, and that the only conservatory writ sanctioned by the Code in aid of executory process is that of sequestration provided for in Code Prac., art. •275, pars. 6 and 8.
“Í have not found any decision interpreting the provisions of article 285, Code Prac., relied on by plaintiff, and previous to giving the present controversy any study or consideration it was my impression, probably from the fact, as stated by learned counsel for plaintiff, that .this writ had also, to my knowledge, been resorted to aid of executory process by at least .one experienced practitioner in this district, .that there could be no other good reason for the enactment of the first paragraph on the ■quoted article because any other interpretation would nullify it and leave it standing as of no force, virtue, or effect.
“The first step which suggests itself to the judicial mind in investigating the meaning of a 'law is to inquire into the purpose of the Legislature in enacting it, and, if that purpose is ascertained, the interpretation can as a consequence also be intelligently determined.
“In order to ascertain the true meaning of a statute, the reason and spirit of it should be considered, and also the cause which superinduced its enactment. This is an accepted canon of construction applying to statutory law as well as to the Constitution.” Shreveport Gas, Electric Light & Power Co. v. Assessor, 47 La. Ann. 65, 16 South. 650; Richard v. Lazard, 108 La. 549, 32 South. 559.
“But I frankly confess that I do not clearly see the purpose of enacting the first paragraph of article 285, Code Prac., unless it be that the framers of the Code meant that the seizure effected by the sheriff under a writ of seizure and sale, after three days’ notice, pending the time for advertising to the day of sale, is a species of provisional seizure.
“Note that the articles following in the Code provide specially what shall be done to obtain this writ, under each of the subsequent paragraphs numbered consecutively from 2 to 5, how the petition shall be presented, what the oath should contain, and not one of the articles, following, describes what shall be done to obtain the writ in executory process, except article 286, which says that the manner of craducting executory proceedings will be provided hereafter. Referring to the chapter on Executory Process, we see, in article 732, that the proceeding by provisional seizure resembles in some sort the executory process, but should not be confounded with it, as they are subject to different rules.
“The writ of provisional seizure seems to be a remedy which has had its origin in this state. I can find no such writ in the French ‘code de procedure civile’ nor in the Partidas, which form the basis of our system of practice. It appears in the original edition of the Code of 1825, and the text of that edition is practically the same as the Code of 1870, save some errors in the translation from the French into the English. The first reference that I can find to the writ in the jurisprudence of the state is in Adams v. Lewis, 7 Mart. (N. S.) 155. I can discover no mention of it in the reports published or the decisions rendered previous to that time, July, 1828. Assuming then that the provisional seizure was a remedy first introduced in our system in 1825, it can readily be conceded that, being an innovation, its functions, purposes, and effects were not fully preconceived by the three jurisconsults who framed that system or Code of Procedure, and that the paragraph under discussion was only a recognition of that right of seizure which is later set out in detail in the chapter on the subject of Executory Process. This conclusion seems to be sustained by the fact that another article of the Code provides a remedy to the mortgage creditor who honestly apprehends that his debt- or is denuding the mortgaged property of its valuable .accessories and objects forming part of it by destination or by being attached thereto.
“Paragraphs 6 and 8 of article 275, and especially paragraph 6, which is found in the Code of 1825, seem to have been framed for that special and only purpose. But if a writ *1003 of provisional seizure afforded the intended remedy, paragraph 6 of article 275 would have no reason for its existence, a conclusion which is repugnant to the most elementary rules of construction.
“The other ground of defendants’ motion does not in my opinion deserve serious consideration. The clerk is authorized by law to grant orders of provisional seizure. His act is that of the court, and the court cannot he in contempt of itself.
“Eor these reasons I believe that the order of provisional seizure was improvidently granted, and that it was issued without sanction of law and should be set aside.”
Counsel of appellant In their brief in behalf of the plaintiff say:
“Article 285 of the Code of Practice enumerates under five sections the cases in which a writ of provisional seizure may be issued, and among others gives that right in executory proceedings'on a title importing a confession of judgment.
“That article stands for something, or it would never have been written in the Code. The theory of that right appears to fit just such a case as the present one. As we understand it, the right which the plaintiff has in executory proceedings when he sues on a title imputing a confession of judgment to obtain a writ of provisional seizure is for the purpose of keeping the property which the property affects intact during the intervening time from the service of the motion to pay up to such time after the expiration of the delays as he may be permitted to have the sheriff seize the property. The moment the notice to pay has been served upon the defendant, he is put upon his guard, and he knows that the property will be seized within three days from such service, and there is absolutely no restraint upon his denuding or destroying the property during that delay, unless in aid of the executory proceedings the plaintiff c'ould provisionally seize and keep intact the property which he expects to seize.”
Counsel declare that the judge is at fault in his reasons for judgment when he says:
“That paragraphs 6 and 8, and especially paragraph 6, of article 275 of the Code of Practice, have been framed for that special and only purpose. If a writ of provisional seizure afforded the intended remedy, paragraph 6 would have no reason for its existence.”
Counsel maintain that paragraphs 6 and 8 of the article afford their client no adequate remedy, for under paragraph 6 the sequestration could only issue when the party applying for the same can truthfully swear that he apprehends that the property will be removed out of the state before he can obtain the benefit of his mortgage, while the right to obtain a sequestration under paragraph 8 is only when the plaintiff fears that the other party will conceal, part with, or dispose of, the movables in his possession-during the pendency of the suit.
Opinion.
There is no doubt that the debtor, as the law is written, is afforded, during the three days intervening between the notice to pay and the date on which the seizure can be-made, an opportunity to have issued at his instance an injunction without bond under the provisions of article 739 of the Code of Practice; but as said by Mr. Justice De Blanc in State ex rel. Williamson v. Judge, 30 La. Ann. 318:
“It may be that the law ought to be amended or changed, that, as it is, it leaves the door too wide open to groundless defenses to the litigation often resorted to gain delay, but, until changed or amended, it must be enforced as it is enacted.”
We cannot presume that the lawmaker, while conferring the right to prevent both the seizure and the sale of property under an executory process through an injunction given without bond, should at the same time-paralyze the effect of such an injunction by granting a provisional seizure. Had it been intended to have simply arrested the sale of the property by injunction, leaving to the creditor the right of making the seizure, the-law could easily have been so worded, but the injunction under the statute extends to both seizure and sale. As matters stand the creditor under his writ of provisional seizure would not have created in his favor thereby a privilege on the crop.
Counsel say that the district judge is in error when he makes the statement that “our writ of provisional seizure can not be found either in the French or Spanish system of practice,” for in volume 4 of a work *1005 entitled “Ley de juciamenteo civil,” which, translated, means “the law of civil practice,” by Messrs. Navarro and Garcia, the article of the Spanish Code of Civil Procedure, art. 951, is given as follows:
“Para decretar el embargo preventivo es necessario:
“(1) Que el que lo solicite presente un titulo ejectivo.
“(2) Que a quel contra quien se pida no tenga domicilio conocido o caso de tenerlo haya desa parecido o exista motivo reeional para creer que oeeultara sus bienes sabiendo que ce trata de proceder -contra el.”
Which, when translated, is as follows:
“In order to decree a provisional seizure it is necessary:
“(1) That he who solicits or asks for it shall present an executory title.
“(2) That he against whom it is asked shall have no known domicile, or in case he should have, that he shall have disappeared or that there should be good reason to believe that he will conceal his property with knowledge that proceedings will be instituted against him.”
In other words, under the Spanish Code of Civil Procedure, a writ of provisional seizure could issue in all eases where the plaintiff sued on an executory title, as our Code of Practice puts it, “when executory proceedings are sued out on a title importing confession of judgment.”
The fact that the granting of a provisional seizure under executory proceeding's (Code Prac. art. 287) can be traced to the Spanish law does not meet the difficulty which arises in this ease. Undoubtedly the seizure of property under a writ of seizure and sale is referred to in the Code as a “provisional seizure”; but at what time and under what process does that provisional seizure arise? Does it arise from a process taken out independently of the executory process and before the writ itself issues, or does it arise at the time of the seizure under the writ of seizure and sale, and is it other than the seizure itself which results from the execution of that writ? We are satisfied that the law does not provide for a seizure prior to that made under the writ of seizure and sale. We think the judgment appealed from dissolving the writ of provisional seizure which issued in this case was correct, and it is hereby affirmed.
We now turn to the second judgment appealed from, that perpetuating the injunction: against the executory proceedings which issued in this case. The decision depended upon the determination by the court of the fact whether the plaintiff had or had not granted time to the debtors as alleged in the petition for injunction. There was conflicting testimony on that subject.
Unlike most cases which come before us under such conditions, each of the parties refers to the other in kindly terms. Plaintiff in his brief says:
“Both witnesses are of undoubted integrity, and both seem very careful to tell no more than the truth. While defendant’s counsel declares that there can be no question that both of these gentlemen have testified honestly and to the best of their ability concerning this matter, and that their statements do not agree, is no evidence of the fact that they are not testifying truthfully. The conflict between them is only another evidence of the uncertainty and unreliability of human testimony because of men not having ,the same understanding about a matter at issue.”
The trial judge assigned no reasons for the conclusion reached by him on this subject, but it is evident that they were reached, not from the standpoint of credibility of the two witnesses, but from the likelihood as to which was right in his recollection as to what had actually taken place between them.
The trial court, in view of the friendly relations of the parties at the time of the conversations between them and of their respective conditions at that time, evidently accepted the version of the appellees as the most likely to be correct.
The plaintiff firm and the defendant had occupied for 15 or 16 years towards each other the position of factor and customer, out of and from which had evidently sprung most friendly feelings. The plaintiffs (sugar *1007 planters) had become heavily indebted to the firm. Part of their indebtedness was evidenced by a note secured by special mortgage, while part of it was represented by a large note which was unsecured at the time of the transaction. The financial situation in the state at the time was bad. The planters required advances of money in order to carry on their planting operations. With a heavy mortgage upon their property, liable at any moment to be foreclosed, it was difficult, if not impossible, for them to have obtained such advances. The firm had gone as far as it was willing to go in the way of making advances to them, but it did not wish to stand in the way of appellees obtaining them from other parties if they could do so. With an assurance from the planter that no seizure would be made until after the crop had been manufactured into sugar, they might do so. They were therefore desirous of being able to give such assurance, and (according to Mr. Dugas) they were authorized under the conversation he had with Mr. Farwell to give such assurance. They acted on their conviction as to what had been said to them and succeeded in obtaining the advances which they needed from other parties. They say they would not have undertaken to make the crop or to have obtained advances under other conditions ; that they would have preferred (and would have been willing) to turn the plantation over to their creditors at once than to attempt to run it even had it been feasible. Mr. Farwell, who represented the firm in this matter, does not deny that he had consented to extend payment of the mortgage note until the beginning of the next year, but he says that this extension was conditioned upon appellees paying in the meantime the interest on that note up to the time of that extension, and securing the second note by collaterals. The second note was surrendered, and a new note given, as early as February of that year without the giving at that time of collaterals, though collaterals to that note were subsequently given to some extent. The fact accords with the recollection of Mr. Dugas,- who was acting for the appellees, who says that in point of fact he had promised, if he possibly could, to give collaterals on the second note and had done so. The transaction in this ease was one of a great number of transactions for large amounts constantly taking place in the course of the firm’s business, which, doubtless, drew to it no special attention; but it was as to appellees the one matter of the year which concerned them, and upon which they were immediately called to take action, and did so. The matter was therefore specially impressed upon witness’ memory, and he contemporaneously guided his conduct upon it. Mr. Farwell says he did not at that time contemplate bringing a suit against the appellees, and we think that the present suit would not have been instituted but for a slip of memory on his part.
We are satisfied that the trial judge acted upon the presumption arising out of the situation existing at the time between the parties and the action which they probably took under that situation. Those presumptions are pressed upon us by appellees. They are forcible in character, and we cannot say that the conclusions of the trial judge were not correct.
For the reasons assigned, we think the judgment should be, and it is hereby, affirmed.