WIMPRENNE v. JOUTY

(December 16, 1929. Opinion and Decree.)
(January 13, 1930. Rehearing Refused.)
(March 10, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Edrington and Carmouche of New Orleans, attorneys for plaintiff, appellee.

J. V. Chenet of Mt. Airy, attorney for defendant, appellant.

WESTERFIELD, J. Odelia Wimprenne, widow of Francois Jouty, brings this suit against the executor of the succession of Francois Jouty, seeking recognition as a widow in necessitous circumstances, and as such entitled to the marital fourth of the succession of her late husband, Francois Jouty, under the provisions of article 2382, Rev. Civ. Code, as amended by Act No. 113 of 1926.

The trial court rendered judgment in plaintiff's favor, and defendant has appealed.

To entitle a wife to the marital fourth under the codal article relied upon, three circumstances must concur: First, a valid marriage; second, the husband must have died rich; and, third, the surviving spouse must be in necessitous circumstances at the time of her husband's death. The claim of the plaintiff is resisted by defendant, who denies that there was a marriage in the sense contemplated by law, that the husband died rich, or that the widow was left in necessitous circumstances.

Plaintiff and her late husband were residents of the parish of St. John the Baptist, and lived next door to each other for a number of years. On December 30, 1920, they were married by a justice of the peace. Each of the contracting parties at the time of their marriage was approaching 80 years of age; the record is not clear as to their exact age. The marriage was not a success. In the words of counsel:

"Fifteen or 22 days after marriage, that is, at a time when the honeymoon usually is spreading its genial rays, Mrs. Odelia Jouty, with a changed heart, quietly, politely brought back to her husband's house his clothes, books, his Courrier Des Etats Unis, and without notice to her husband left for the City of New Orleans, where she remained 15 days, and then returned home. They never lived together again. Her sensible and sensitive old husband understood that her departure from home, under the circumstances and without notice to him, was a polite way to get rid of him, and her whole conduct thereafter showed that his conclusion was right."

The age of the bride and groom and the desertion of the groom by the bride and her subsequent failure to be present at the demise of her aged husband are pointed to by defendant's counsel and mainly relied upon, although the other grounds of attack are not abandoned, as defeating her right to the marital fourth which she claims.

Defendant's able counsel has reviewed the genesis of this article of our Code in a most interesting way. We are reminded of the fact that the marital fourth originated in the Novelle of Justinian, was incorporated in the Partidas, where it remained as a written law of the province of Louisiana during forty years, under the Spanish domination, and from which source it was adopted as a part of our codal law. The statement was made, in argument, that its appearance in the Justinian Code was due to the insistence of Justinian's wife, Theodora, whose sole purpose is said to have been the protection of the worthy members of her sex, who, after a dutiful discharge of their conjugal obligations, found themselves in destitution on the death of their husbands, after having enjoyed a life of ease, during the existence of their connubial relations. We are re-

ferred to Merlin's Repertoire de Jurisprudence, Edition of 1817, Volume 26, page 176, where the author in speaking of this provision of law said:

"What is the purpose of this law?" "To prevent that a wife who has been chosen through love and whose dowry was her merit from having her condition suddenly changed and who, after having enjoyed the luxury or at least the comforts of her husband's home, does not totally fall into poverty by his death, and does not drag into the dust the name and the quality of a spouse." "It is the sense which all interpreters have placed upon this Novelle."

Further reference is made to this author, and counsel quotes the following from page 184 of the same volume:

"In this respect, in addition to the poverty of the wife, the Novelles 53 and 117 require two conditions to enable her to deserve the fourth of the succession of her husband: (1) That she was freely chosen for his wife through pure tenderness and in view of an honest marriage; (2) that she had always lived with her husband."

"From which it is easy to perceive that the object of the legislator has been to recognize the devotion of a wife for her husband and to conserve the dignity of marriage."

"It seemed equitable to Justinian that the one that love or virtue had raised to the rank of spouse, who had lived in a certain luxury during the life of husband and shared with him all of the burdens and all the cares of marriage, did not suddenly fall in misery by the death of a man, who had forgotten her tenderness or ignored his obligations."

We are also referred to Pickens v. Gillam, 43 La. Ann. 352, 8 So. 928, where the text of Merlin's work is quoted with approval and to the case of Armstrong v. Steeber, curator, 3 La. Ann. 713, where the following language is used:

"* * * Before she (the wife) can recover, she must show affirmatively that her husband died rich, and that she was left, by his demise, in necessitous circumstances. The evidence of the first of these facts is not satisfactory, and the second is disproved. She had left her husband several years before his death, to abandon herself to the life of profligacy congenial to her. She did not go near him in his last illness, and suffered him to die, uncared for and alone. Her situation was no more affected by his death than that of other abandoned women in this city. He did not, therefore, leave her in necessitous circumstances within the meaning of the article of the Code."

See, also, Succession of Rogge, 50 La. Ann. 1228, 23 So. 933, and Richard v. Lazard, 108 La. 549, 32 So. 559, to the same effect.

Counsel's argument is undoubtedly supported by the authorities upon which he relies, but unfortunately for him the law in this state no longer makes any distinction between the dutiful, affectionate, and deserving widow and one who fails to exhibit those virtues. We are not at liberty to follow the law as it formerly existed nor indulge in any sentimental observation upon the beatific state of the ideal conjugal relation, nor give expression to any animadversions upon the marriage of individuals both of whom are approaching dissolution. Certain objections occur to us and many disadvantages and disabilities are evident in a marriage like that we are considering here, and perhaps, upon sentimental consideration, or as a matter of simple justice, an 80 year old wife, who would endure but 15 days of marriage with her ailing and aged husband should not be entitled to participate in his succession, but our Supreme Court does not recognize these disqualifications as fatal to the wife's claim, whatever may have been the former jurisprudence in this state.

In the case of Veillon v. Lafleur's Estate, 162 La. 214, 110 So. 326, 329, where the court was considering article 3252 creating a preferential claim of $1,000 in favor of a widow and minor heirs in necessitous circumstances, it was said:

"Civ. Code, art. 2382, granting the marital portion to the surviving spouse in necessitous circumstances, and Civ. Code. art. 3252, creating a preferential claim of $1,000 in favor of the widow and minor heirs in necessitous circumstances, are laws in pari materia, and there is a line of jurisprudence to the effect that the wife contemplated by the codal articles is a wife in fact and not merely a wife in name. Armstrong v. Steeber, 3 La. Ann. 713; Pickens v. Gillam, 43 La. Ann. 350, 8 So. 928; Succession of Rogge, 50 La. Ann. 1220, 23 So. 933; Richard v. Lazard, 108 La. 543, 32 So. 559. Per contra, there is another line of cases rejecting the doctrine of those decisions, and holding that under the plain provisions of the Code no condition whatever is attached to the right of the necessitous husband or wife to claim the marital portion or of the necessitous wife to claim the so-called widow's homestead. Succession of Marc, 29 La. Ann. 413; Sabalot v. Populus, 31 La. Ann. 855; Succession of Pelluat, 127 La. 878, 54 So. 132; In re Coreil's Estate, 145 La. 788, 83 So. 13; Succession of Guillon, 150 La. 587, 91 So. 53; Succession of Hagan, 150 La. 934, 91 So. 303. * * *

"Our own conclusion is that the law invoked by the plaintiff is clear and explicit. It attaches no qualifications and imposes no conditions upon the necessitous wife who seeks to avail herself of its beneficial provisions. It makes no distinction between the faithful wife and the unfaithful wife. The husband, who is the sole judge of his feelings and of his honor, is the one to do this by taking appropriate legal action to sever the matrimonial tie if he is dissatisfied therewith. If he does not choose to take such action during his lifetime, no one, after he is dead, ought to be permitted to question the status of his wife and to contest her preferential right to receive $1,000 out of her husband's estate."

On the second point, as to whether the husband died rich, the property of the succession of Francois Jouty in the city of New Orleans and in the parish of St. John the Baptist was appraised in the aggregate at $5,045.14. In addition, Jouty died possessed of a certain hereditary interest in property, situated in the republic of France, the value of which is uncertain, but, estimated by some one in the record at $500. Jouty's possessions, at the time of his death, were modest enough, and not sufficient under ordinary conditions to justify the use of the word "rich" in describing his condition. But all things are relative, and we are convinced that in comparison with his wife's condition, and within the meaning of the codal provision she relies on, he was wealthy.

In the Succession of Morris, 137 La. 719, 69 So. 151, a widow was allowed a marital fourth of an estate aggregating only $2,025.

Finally, as to the necessitous circumstances of the wife, it appears that she was possessed of a small tract of land in the parish of St. John the Baptist upon which was erected a double tenement, in one side of which she resided, and for the other she obtained a monthly rental of $3. She raised a few chickens and managed to secure a precarious existence: her wants being few and simple at her advanced age.

Our conclusion on this point is that the condition of Mrs. Jouty was such as to be clearly within the expression "necessitous circumstances" used in the Code.

For the reasons assigned, the judgment appealed from is affirmed.