## No. 10,797.

### A. O. P. PICKENS VS. R. L. GILLAM ET AL.

The husband and the wife separated more than seventeen years before this suit was brought, and afterward lived at some distance from each other, without any more regard than if not married.

"When the wife or the husband die rich *leaving* the survivor in necessitous circumstances the latter has the right" (R. C. C. 2382) to the marital fourth.

After so many years of unfriendly separation, the deceased did not leave the survivor in necessitous circumstances.

The leave-taking dates long prior to the death.

The support of the unfortunate spouse does not end with the marriage but the principle upon which the law appears to be founded is "that neither of the married parties *who have lived together in the common enjoyment of wealth and the position it gives* shall be reduced to want."

The plaintiff did not live with the defendant in the common enjoyment of wealth nor did he satisfactorily establish why he did not.

Held, that he can not recover the marital fourth.

APPEAL from the Tenth District Court for the Parish of Red River. *Hall, J.*

*J. C. Egan* for Plaintiff and Appellant.

*John C. Pugh* and *Wise & Herndon* for Defendants and Appellees:

To entitle a husband to claim from the succession of his deceased wife the marital fourth, under Article 2382 of the Civil Code, he must prove that his wife died rich, and that he was left by her death in necessitous circumstances. A husband who had abandoned his wife for seventeen years before her death can not be said to have been left by her in necessitous circumstances within the meaning of that article. 3 An. 713.

The opinion of the court was delivered by

BREAUX, J. This suit was brought by the plaintiff to recover the marital portion, that is, the fourth of the succession of his wife in full property, under Article 2382 of the Civil Code, which provides that "when the wife has not brought any dowry, or when what she has brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion."

The evidence shows that the plaintiff and the late Mrs. Vaschor were married in 1871.

That the wife did not bring any detal property in marriage.

That she left no issue of the marriage.

At the date of her death she owned property worth more than $8000.

He did not own property and depended on his daily labor for his support.

The marital relations have not been dissolved by any decree of court.

Less than two years after the marriage they separated and lived apart.

There never was the least attempt at reconciliation.

The plaintiff has resided in different States at some distance from his wife. The evidence does not disclose that he made the least inquiry about her during the seventeen years of separation.

He was not present at any time during her last illness, nor at her funeral.

The facts are not controverted, except insofar as relates to the separation.

The plaintiff contends that his wife left him and invokes in support the testimony of a witness, who testifies that: "The reason they separated was his indolence and not helping her to take care of things. She owned a place on Honey Bayou. I don't know whether she had paid all on it or not, but think she had, and had some money. She told me that he made away with about $1500. He did not quit her at all; she quit him."

Three witnesses for the defense state that he left her.

No comment or explanation with reference to the separation is made, only that he left her; no reason is mentioned, or aught said of any of the particulars of this separation. Who was the aggressor, who in the wrong, the brief statements of the witnesses do not enable us to determine. The fact remains that during seventeen years there existed a cold resentment between them, and not the least attempt at reconciliation. They were strangers to each other, and it was as if they had not been married.

A few months after her death the husband presented his claim for the fourth of the succession. It is proper to consider the effect to be given to separation and the evidence with reference to absence.

Protracted absence may be considered with other facts. A husband's desertion can be shown by a variety of circumstances, as for instance his departure with the avowed intent never to return, his prolonged absence without business detention, or without providing in the least for his family, although not entirely without ability so to do.

The abiding together of married persons implies that the husband shall select the place of dwelling and that in case of difference in this respect his will shall prevail. C. C. 120. He left the place where they were married.

In most cases involving questions relating to the marital fourth in the decisions of the courts of this State reference is made to the 58 and 117 Novelles of Justinian, and to 6th Partidas, tit. 13, law 7.

It was not retained in the Code Napoleon, but it was embodied as one of the articles of the Louisiana C. C. We therefore have not the assistance of the progressive French jurisprudence on the subject.

Merlin, in his Repertoire, *Verbo Quarte du Conjoint Pauvres*, dwells on the necessity of some relations existing between the spouses to enable the survivor to recover the marital portion. We translate: "In that respect, in addition to the poverty of the spouse, the Novelles 58 and 117 require two conditions that she may recover the fourth of the succession of her husband; the first, an honest marriage; second, that she always abided with him. From which it is not difficult to judge that the object of the legislator is to conserve the dignity of marriage."

In a case quoted, with approval, by the same commentator (Verbo Ib.), the inquiry occurs: "After the marriage, did she dwell with her husband? Did she remain near him to the end?" It is answered: "Not a moment of concord and union."

Again from the same commentator, same subject, we quote: "Would it be proper that one who has borne with dignity the name and condition of her husband during his life, shared his fate and participated in his good fortune, should all at once fall into abject poverty because she brought in marriage only merit and virtue."

The 53d Novel was in the interest of the wife only, but afterward, by Chapter 5 of the 117th Novel, the same right was given to the husband. It was not allowed when the spouse claiming had been wanting in interest, feeling and attachment.

The principle which prevailed in construing the laws just quoted is felt in the jurisprudence of Louisiana.

The support of the unfortunate spouse does not end with the marriage, but the principle upon which the law appears to be founded is "that neither of the married parties who have lived together in the common enjoyment of wealth and of the position which it gives shall be suddenly reduced to want; and a "part of the estate of the deceased, who has died rich, is appropriated to relieve the survivor, who in the absence of it would be reduced to poverty." Succession of Fortier, 3 An. 105.

The union of the spouses and the common enjoyment of wealth is a part of the train of reasoning in the case of Connor vs. Connor, 10 An. 451.

The article of our Code is clear: "Leaving the survivor in necessitous circumstances."

After these many years of unfriendly separation, the deceased did not leave the survivor in necessitous circumstances. The leave-taking took place long prior to the death.

We at first felt the force of the opinion in the case of Gee V. Thompson, 11 An. 660, urged upon our attention by plaintiff's able counsel. On second reading it occurs that the features of the case are not similar.

The question solved is the following:

Was the plaintiff the wife of Saunders at the time of her death?

She had been driven away; had been made an outcast; her name had been mercilessly aspersed by her husband; she attempted to return but was prevented by him.

His conduct compelled her to place herself under the law's protection; the court held that she had not placed herself in a worse condition by so doing.

That separation from bed and board did not dissolve the marriage ties and that she had a right to the marital fourth.

The plaintiff's conduct was not similar.

He hastily sought a home elsewhere, and gave himself no concern about the marriage. It is only twice mentioned so far as the record discloses.

The first time when he brought the suit, he testifies he brought, for divorce; the second time when this suit was filed, for the marital

portion.   The cause of the absence not being satisfactorily shown the court will not allow the demand.

In the case of Armstrong vs. Steeber, curator, et al., 3 An. 713, it is true that it is not satisfactorily shown that the husband died rich, but the court none the less adds: That the wife had left her husband several years before his death and abandoned herself to a life of shame.

She did not go near him in his last illness and suffered him to die uncared for and alone.

He did not leave her in necessitous circumstances.

She had committed the desertion.   The marital status had been disregarded and therefore she was without right.

In the absence of all attempts to maintain the marital relations. Considering the wilful and prolonged absences the court concludes that the plaintiff can not recover.

The views expressed make it unnecessary to pass upon the questions presented in plaintiff's bill further than to state that the abandonment is alleged and therefore was susceptible of proof, and that we do not consider as proven the averments about apprehension of bodily harm argued on part of the defense.

The District Judge who heard the witnesses, who is acquainted with them in all probability, and who weighed their testimony at the time given, found for defendants.

After carefully considering the facts and studying the law applying we affirm the judgment.