41 So.2d 837

MALONE v. CANNON.

No. 39027.

May 31, 1949.

Rehearing Denied June 30, 1949.

Herold, Cousin & Herold, Chandler, Lunn & Frichel, Shreveport, for defendant-appellant.

T. B. Wilson, W. M. Phillips, Shreveport, for plaintiff and appellee.

HAMITER, Justice.

In this action plaintiff, Henry H. Malone, claims from the estate of Mrs. Myrtle Cannon Malone, deceased, the marital fourth provided for in Revised Civil Code, Article 2382. Mrs. Sybille Cannon, the mother and universal legatee of decedent, is the defendant.

Plaintiff and the decedent, as the record discloses, were married on November 22, 1935. Into the marriage she brought no dowry. As man and wife they resided together in Shreveport until August of 1936, or for about nine months, when a separation occurred. Thereafter, they lived separate and apart continuously. The wife died on January 28, 1946, leaving no children.

During that entire period of separation (almost ten years) Mrs. Malone was employed in the Shreveport Post Office, receiving an annual salary of $2300 plus overtime payments, and she lived with her mother, the defendant herein. With earnings from her mentioned employment she made various investments, and, as a result thereof, she owned at her death real and personal property, conceded to belong to her separate estate, having a net inventory value of approximately $38,000. By an ex parte judgment, and in accordance with the provisions of her daughter's will, defendant was placed in possession of all of the property.

Meanwhile, in 1939, about three years after the occurrence of the separation (August, 1936), the plaintiff suffered what is referred to as a stroke, and thereafter, according to his testimony, he worked intermittently. In the early part of 1943 he moved from Shreveport to California where he secured employment first as an electrician and later as a hotel clerk. At the time of Mrs. Malone's death in Janu-

ary, 1946, he occupied the latter position, receiving for his services $12 per week plus his room and board; he owned no property. In the early part of 1947 he returned to Louisiana, making his home with his brother at Logansport.

Plaintiff and decedent were never divorced. On the trial of this case, however, the defendant sought to prove that her daughter on August 11, 1936, immediately following a severance of the marital relations, instituted against this plaintiff a suit (it never went to judgment) for separation from bed and board charging him with cruel treatment, and also to prove that the allegations of fact in the petition of that suit were true. In this connection defense counsel offered in evidence the record of the mentioned suit, being No. 69,439 on the docket of the First Judicial District Court of Caddo Parish, which disclosed personal service of citation on this plaintiff and no answer filed by him. All of the proof so tendered was excluded as being irrelevant.

The district court, after trial of the merits, concluded that plaintiff was entitled to the marital fourth and, accordingly, it rendered and signed a formal judgment awarding him that interest in and to decedent's estate, the several items of property of which were described and valued therein. From the judgment defendant appealed. Answering the appeal plaintiff prays that the judgment be amended by allowing him one-fourth of the price received by defendant for three certain items of property (she

sold them after having been placed in possession thereof) instead of one-fourth of the valuation at which those items were inventoried in the succession proceeding.

Article 2382 of the Civil Code, the provisions of which furnish the basis for the instant claim, reads insofar as pertinent as follows:

"When the wife has not brought any dowry, or when what she brought as a dowry is inconsiderable with respect to the condition of the husband, if either the husband or the wife die rich, leaving the survivor in necessitous circumstances, the latter has a right to take out of the succession of the deceased what is called the marital portion; that is, the fourth of the succession in full property, if there be no children, and the same portion, in usufruct only, when there are but three or a smaller number of children; and if there be more than three children, the surviving, whether husband or wife, shall receive only a child's share in usufruct, and he is bound to include in this portion what has been left to him as a legacy by the husband or wife, who died first."

Directing attention to the fact that by her last will and testament the decedent disposed of the entirety of her property, defense counsel contend that this plaintiff is without right to invoke the quoted codal provisions; they argue that a surviving spouse cannot seek the reduction of a donation, for according to Civil Code Article 1504, "On the death of the donor [or] tes-

tator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns * * *." We find no merit in the contention. The marital fourth appears to be a benefit which the law obligates an estate to provide under certain conditions to a surviving spouse, irrespective of the rights of heirs, forced or otherwise, and of legatees; and to claim it in a judicial proceeding is not the same as to sue for the reduction of a donation under Article 1504. Moreover, by its very terms Article 2382 shows that the marital fourth is demandable in a testate, as well as in an intestate, succession, a declaration therein being that "* * * he is bound to include in this portion what has been left to him as a legacy by the husband or wife, who died first."

There seem to be no prior decisions determining this particular question; however, the right to claim the marital fourth in testate successions has been recognized in the following cases: Melancon's Widow v. His Executor et al., 6 La.Ann. 105; Succession of Morris, 137 La. 719, 69 So. 151.

Again, defendant urges that plaintiff cannot recover herein for the reason that he was not in necessitous circumstances and decedent was not rich within the meaning of Article 2382. As before shown the value of Mrs. Malone's estate at the time of her death (the value as of that date governs, not the amount realized from subsequent sales of the property as contended for in plaintiff's answer to the

appeal) was approximately $38,000; whereas, plaintiff then owned no property whatever, and his income (as a hotel clerk) was only $12 per week plus his room and board. Under those circumstances it must be concluded that Mrs. Malone died "rich" while plaintiff was in "necessitous circumstances" within the intendment of the codal article, for this court has consistently said that such terms are to be treated relatively and applied in a comparative manner. Melancon's Widow v. His Executor et al., supra; Succession of Blackburn, 154 La. 618, 98 So. 43; Succession of Ledet, 175 La. 225, 143 So. 56; Succession of Andrus, 187 La. 931, 175 So. 624.

The final question to be determined in this litigation, and the most serious one, is whether plaintiff is barred from claiming the marital fourth by reason of his having lived separate and apart from Mrs. Malone at the time of her death and continuously prior thereto for almost ten years. In answering that question in the negative the district judge, as shown by his written reasons for judgment, followed certain expressions contained in opinions of comparatively recent cases decided by this court (hereafter discussed), although he recognized that under earlier decisions a contrary answer would be proper.

Up to and including Succession of Rogge, 1898, 50 La.Ann. 1220, 23 So. 933, 936, our jurisprudence indisputably was uniformly to the effect that there could be no recovery of the marital fourth if the spouses were

living separate and apart on the occurrence of death to the rich one, unless that condition had resulted by reason of the conduct of the decedent. The husband in the Rogge case, as here, had been separated from his wife for many years prior to her death. In denying his claim for the marital fourth the court reasoned:

" * * * The principle upon which the right of the necessitous surviving spouse to take the marital portion—the reason, the cause, the motive of the law in granting it —is founded is the consideration or policy that neither of the married persons, who have lived together in the common enjoyment of wealth and of the position which it gives, shall be suddenly reduced to want; and accordingly a part of the estate of the opulent deceased spouse is appropriated to relieve the survivor, who, in the absence of it, would be reduced to poverty. Succession of Fortier, 3 La.Ann. 105; Pickens v. Gillam, 43 La.Ann. 350, 8 So. 928. But as to his right to take the marital fourth the surviving spouse is not an heir, and the portion he is entitled to is not an inheritance. It is therefore not a vested right, nor is it a debt. It is a gift, a bounty, bestowed, not by the deceased, but by the law, when the conditions surrounding the relations of the parties to each other before and at the time of the dissolution of the marriage by the death of one of them, and surrounding the one surviving after the dissolution, meet the requirements of the law. Thus, the spouse dying must be rich, or comparatively so; the one surviving, in necessitous circumstances, or comparatively so, with regard to the other. Again, the one dying rich—possessed of wealth which had been the common enjoyment of the conjugal pair—must leave the other in necessitous circumstances. If these conditions do not exist, the reason, the motive, the purpose of the law fail, and the right to take does not attach. Connor v. Connor, 10 La.Ann. 451; Succession of Justus, 44 La.Ann. 721, 11 So. 95. For over eight years this husband and wife had not lived together prior to the death of the wife. He had resided in one state; she, in another. They had no relations with each other of any kind. She had twice brought suit for divorce against him, recovering a decree the last time. [The validity of this decree was questionable.] For years there had been no common enjoyment of the wealth the wife possessed. She did not die leaving him in necessitous circumstances. Her death did not suddenly snatch him from the enjoyment of riches, and reduce him to the condition of penury. The 'leaving' of this couple—the parting between them—had occurred years before the one with riches died. The husband had gone his way, she hers, long before. He had ceased for nearly a decade to have the enjoyment of either her society or her property or means. Under these circumstances his right to claim the marital fourth cannot be held to exist. Pickens v. Gillam, 43 La.Ann. 350, 8 So. 928. In reaching this conclusion, we recognize fully and approve of the principle announced in Gee v. Thompson, 11 La.Ann.

657. In that case the wife was driven by the conduct of the husband to place herself under the protection of the law. She had sued for and recovered a judgment of separation from bed and board. The court held that by placing herself under the protection of the law she had not put herself in a worse condition; that the judgment of separation did not dissolve the marriage; that by it the law had, on account of the husband's bad conduct, excused her from living with him; and that being his wife when he died, and legally excused from cohabitation, no fault was attachable to her, and she was recognized as entitled to the marital portion. The husband in the instant case presents no such state of facts as did the wife in that case." (Brackets ours.)

In the later case of Succession of Kunemann, 115 La. 604, 39 So. 702, which involved a claim of a surviving wife to the marital fourth, the doctrine of common enjoyment of wealth was again applied. Because the husband's wealth did not accrue until after his death (he did not die rich) the claim of the widow was disallowed, notwithstanding that she remained faithful to him until the end.

In Succession of Pelloat, 127 La. 873, 54 So. 132, the court awarded the marital fourth to the surviving wife. There the marriage had been kept secret at the request of the husband, and they did not live publicly under the same roof. It was a sincere marriage, however, founded and existing on the mutual affection and devotion of the spouses; They had planned a future together upon the cessation of the reason for the secrecy; the rich husband furnished the money with which to pay the wife's board, clothing and medical expenses; they corresponded with each other; and he visited her regularly. Their situation was not the same, the court pointed out, as in the Rogge and Pickens cases, supra, where there had been a separation and the spouses acted as strangers to each other just as though they had not been married. By awarding the marital fourth to the wife, when she had not received the full benefit of the husband's wealth, the decision signaled a departure from the common enjoyment theory.

That departure became more evident in Succession of Guillon, 150 La. 587, 91 So. 53. Therein, a relatively rich wife had died only nineteen days after her marriage, and the surviving husband, who was comparatively poor, claimed the marital fourth from her estate. On the original hearing the court, with one member dissenting, rejected the claim after testing it in the light of the common enjoyment doctrine. However, on a rehearing, by a four to three decision, the claimant husband recovered, the majority opinion assigning for its conclusion the following reasons:

"It is clear to our minds that the facts of this case fulfill every requirement laid

down by article 2382 of the Revised Civil Code, which provides as follows:

\* \* \* \* \* \*

"Under this article the following facts must exist to entitle the survivor to claim the marital fourth:

"(1) A marriage.

(2) Husband or wife must die rich.

(3) Party dying must leave the survivor in necessitous circumstances.

(4) There shall be no children.

"It is true that Jeanne Marie Guillon was in the last stages of consumption at the time of her marriage, and died 19 days thereafter; but it is also true that she had been engaged to marry Frank Fagot, Jr., for several years; that the marriage was celebrated at the home of the bride at Abita Springs by the Catholic priest of Covington, and that the marriage license was regularly and duly obtained from the clerk of the Twenty-Sixth judicial district court at Covington. There was nothing clandestine about the marriage. There is no suggestion of fraud or bad faith on the part of either of the contracting parties; on the contrary, it seems to have been performed as an act of mutual affection and devotion.

"The sole and only objection raised against the right of the husband in this case to claim under the law the marital fourth is that the marriage was too recent, and therefore that the husband and wife did not live together in the common enjoyment of the wealth of the rich spouse for the necessary period required by law. There are some decisions to this effect. \* \* \*

"However, a complete answer to this contention is that no such condition is attached by article 2382 of the Civil Code to the right of a necessitous husband or wife to claim the marital fourth.

"The letter of this article of the Code is plain and free from ambiguity, and cannot be disregarded under the pretext of pursuing its spirit. C. C. art. 13.

"We prefer, therefore, to follow the line of decisions of this court, which hold that the article in question does not limit its operations to those whose married life should have lasted a specified time. \* \* \*"

Thus, the court in the Guillon case, by holding that the short duration of the marriage was no bar to the husband's right to the marital fourth, unequivocally repudiated the common enjoyment doctrine enunciated and applied in the earlier cases. But it did not therein, nor in Succession of Pelloat, either expressly or impliedly overrule the former decisions insofar as they held that a surviving spouse could not recover where for a long continuous period prior to the death of the other there had been a living separate and apart, the experiencing of an abnormal marital relationship. In neither of those cases was that issue presented; as a matter of fact in both, on the occurrence of death, there ex-

isted as between the spouses mutual affection and devotion.

In Succession of Hagan, 150 La. 934, 91 So. 303, the surviving husband claimed the marital fourth. Until the wife's death the spouses lived together, and apparently their marital relationship was normal. Thereafter the surviving husband attempted to sustain a forged will of his wife, in an effort to acquire her entire estate, and that act was urged in opposition to the claim for the marital fourth. The court merely held that his right was not forfeited by conditions occurring subsequent to the death.

The next case in our jurisprudence of importance in this consideration is Veillon v. Lafleur's Estate, 162 La. 214, 110 So. 326, although it did not involve a marital fourth demand. It presented a claim for the $1000 widow's homestead authorized by Civil Code Article 3252, the pertinent provisions of which are:

"Whenever the widow or minor children of a deceased person shall be left in necessitous circumstances, and not possess in their own rights property to the amount of one thousand dollars, the widow or the legal representatives of the children, shall be entitled to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by them, or either of them, in their own right, will make up the sum of one thousand dollars, and which amount shall be paid in preference to all other debts, except those secured by the vendor's privilege on both movables and immovables, conventional mortgages, and expenses incurred in selling the property. The surviving widow shall have and enjoy the usufruct of the amount so received from her deceased husband's succession, during her widowhood, which amount shall afterwards vest in and belong to the children or other descendants of the deceased husband."

The surviving wife in the Veillon case deliberately and voluntarily abandoned her husband, and she had remained away from him without justification during the last four years of his life. On a rehearing, with two members dissenting, the court sustained her claim to the widow's homestead. In reaching this conclusion the majority opinion observed that Articles 2382 and 3252 are laws in pari materia; then it cited several decisions to support the proposition that under each of those articles no distinction is to be made between a faithful and an unfaithful spouse. Some of the decisions thus cited were Succession of Pelloat, Succession of Guillon and Succession of Hagan, all supra, which dealt with the marital fourth; but they, as shown above, did not so hold.

Undoubtedly the conclusion in the Veillon case was correct, because under Article 3252, in view of its object hereinafter discussed, the question of the marital relationship of the spouses has no bearing on the right of the surviving wife to claim

the $1000 homestead award thereby authorized. But Articles 3252 and 2382 are not in pari materia, and for this reason it was both improper and unnecessary for the court, in deciding the widow's homestead issue, to consider those cases dealing with the marital fourth.

 Civil Code Article 17 states that, "Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another." And in 59 Corpus Juris, verbo Statutes, Section 620, it is said:

"Statutes in pari materia are those which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose; and although an act may incidentally refer to the same subject as another act, it is not in pari materia if its scope and aim are distinct and unconnected. It is a well established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference

to the subject matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. * * * "

A careful consideration of the history, the composition, and the effect of Civil Code Articles 2382 and 3252 can furnish only the conviction that they are not upon the same subject matter and have not the same general purpose, aim and scope.

The marital fourth doctrine, found in Article 2382 of the Civil Code of 1870 under Title VI which treats of marriage contracts, became a part of the law of Louisiana through Article 55 of the Civil Code of 1808, it having been derived from Las Siete Partidas. It had its origin, however, in the Roman law, the Novelles of Justinian having provided therefor. The written law of France, which followed the Roman law, recognized the marital fourth; however, the Code Napoleon contained no provisions respecting it. Our codal provisions on the subject, therefore, were influenced by the Roman, French and Spanish authorities.

 The marital fourth was established in honor of the past marriage, Armstrong v. Steeber, 3 La.Ann. 713, Succession of Justus, supra, and according to Merlin, the French jurist whose writings the opinion in Picken v. Gillam, supra, quoted with approval, the wife could not recover it from

the estate of her deceased husband unless (1) an honest marriage had existed and (2) she always abided with him. The object of the marital fourth, as said in Succession of Fortier and Succession of Rogge, supra, was to prevent a spouse on the death of the other from being left in abject poverty after having become accustomed to the wealth of the decedent. Of course, that enjoyment of wealth theory was rejected in later cases wherein the marital relationship existing at the time of death had been of short duration and not sufficient to permit the theory's application, Succession of Pelloat and Succession of Guillon, supra, as well as in the case of the spouse who was compelled to leave because of the conduct of the decedent, Gee v. Thompson, supra; but the requirement for abiding together in matrimony, except in the instance last referred to, was not also rejected. From all of which it may be said that the marital fourth doctrine, when incorporated in our law in 1808, contemplated the existence of a normal marriage—both in law and in fact—in which the spouses discharge the mutual duties specified in Civil Code Articles 119 and 120, particularly those of fidelity, support and assistance.

The pertinent provisions of Article 3252, on the other hand, were not derived from or influenced by the Roman, French or Spanish authorities. They had their origin solely in Act No. 255 of the Louisiana Legislature of 1852, the title to which read: "To provide a homestead for the widow and children of deceased persons;" and they were enacted without reference to any other legal concept. In the Civil Code of 1870 on its adoption, they were made a part of Article 3252 under Title XXI—"Of Privileges." The benefits afforded thereby are in favor of the surviving wife and children (but not a surviving husband), with reference to which " * * * the widow or the legal representatives of the children, shall be entitled to demand and receive from the succession of the deceased husband or father, a sum which added to the amount of property owned by them, or either of them, in their own right, will make up the sum of one thousand dollars * * *." This homestead claim, it is noted, is limited in amount to $1000; whereas, the claim to the marital fourth is unlimited except on the recited fractional or percentage basis. Also unlike the marital fourth, the claim is payable irrespective of whether the husband be "rich"; even from an insolvent succession (involving property belonging either to the community or the husband's separate estate) in preference to most of the creditors.

It is true that in each of the Articles, 2382 and 3252 the phrase "in necessitous circumstances" is employed. The meaning, however, is not the same. Under Article 3252 the widow and children are not in necessitous circumstances when both together possess in their own rights property to the amount of $1000. Under the marital fourth article, on the contrary, a surviving spouse (either husband or wife) may be in neces-

.sitous circumstances when worth considerably more than that amount, the status being determined on a relative basis by comparison with the decedent's estate. Thus, in Smith v. Smith, 43 La.Ann. 1140, 10 So. 248, a surviving wife, whose husband died "rich," was held to be in necessitous circumstances when owning property of the value of $4500. If the two articles are in pari materia and must be interpreted alike then the widow in the Smith case, as well as the respective surviving spouses in numerous other cases whose worth was more than $1000, should have been denied the marital fourth on the ground that she was not in necessitous circumstances. But this $1000 maximum test has never been applied in any of the material fourth cases.

Furthermore, the benefits of Article 3252 are not granted in "honor of the marriage," as are those of Article 2382 (according to its history); if they were the husband, as well as the wife, should and would be eligible to receive them. To the contrary, obviously, they are granted in the interest of society to prevent the surviving widow and the minors from becoming wards of the state; and for this reason, incidentally, it is not required that the spouses be actually living together when death dissolves the marriage. Clearly the object or purpose of the legislation, as the title and provisions of the original Act No. 255 of 1852 indicate, was to guard against, as far as possible, the beneficiaries (widow and minors) becoming paupers; it was to provide for them a homestead, the rights respecting which are created by constitutional or statutory provisions to shelter the family and provide it a refuge from the stresses and strains of financial misfortune—in general to promote the stability and welfare of the state. 40 Corpus Juris Secundum, verbo Homesteads, § 2. The husband was not so protected under Act 255 of 1852, now Article 3252, for the obvious reason that it was thought he could very well care for himself. In this connection it is appropriate to point out that the ability of the husband to provide his own support is of no importance with reference to the marital fourth, this having been held in Succession of Fortier, supra, decided in 1848.

In that same year (1848), moreover, this court also held in Armstrong v. Steeber, supra, that a wife who had abandoned her husband several years before his death was not entitled to the marital fourth, which decision was fresh in our jurisprudence, was in full force and effect, and was presumably known to the Legislature on the adoption in 1852 of the widow's and minors' homestead law. But the latter law has not been similarly interpreted, and this circumstance is further evidence that the articles in question have no common purpose.

Since Articles 3252 and 2382 are not on the same subject matter, have not the same purpose, aim and scope, and, hence, are not in pari materia the reference made to the marital fourth, and the cited cases on that subject, in Veillon v. La-

fleur's Estate, supra, which involved a widow's homestead claim, was obiter dictum and not of binding effect. As pointed out above, however, the conclusion reached in that case was proper.

There are other reported decisions of this court, unfortunately, wherein it was also incorrectly held that the articles in question are laws in pari materia and are to be interpreted alike. But in none of them would the result have been different had those articles not been treated together, except Richard v. Lazard, 108 La. 540, 32 So. 559, which was later overruled (and properly so) by cases dealing with the same subject—the widow's homestead claim. True, that cannot be said of the decision of the Orleans Court of Appeal in Wimprenne v. Jouty, 12 La.App., 125 So. 154, in which a writ of certiorari was denied. But the conclusion therein was reached by following the obiter dictum of the Veillon case, and the review by this court on the application for the writ was not so thorough as it would have been had the litigation come here as if on appeal.

 Considering the historical background and development of Civil Code Article 2382, as well as the jurisprudence of this court which is appropriate to it, therefore, we are of the opinion that the marital fourth is not recoverable where the spouses were living separate and apart, with their marital relationship severed, at the time of and for a substantial period prior to the dissolution of the marriage by death,

unless the separation be caused solely by the conduct and acts of the decedent. A contrary view would promote injustice, not justice. Let us suppose, for example, that a deceased wife leaves a separate estate of $200,000, all of which she inherited a few weeks prior to her death. The husband arbitrarily abandoned her many years previously, and at no time during the period had he rendered any aid or support. Would justice demand that he be given $50,000 of that inheritance since he was a husband at law, although not one in fact? The question answers itself. It may be said that such wife should have sought a divorce prior to her death, and thereby deprived him of the right to the marital fourth. The law, of course, would have permitted her under those circumstances to obtain a divorce; but it does not state that she was required to seek one. Too, there might have existed a good and sufficient reason for her not wanting to sue, such as her entertaining a conscientious objection to divorce in principle.

 In the instant case, as above shown, plaintiff had been separated from his wife continuously for almost ten years prior to her death, the last three of which he spent in California; he was not even in attendance during her last illness or at her funeral. As to the reason for such separation and living apart the record does not disclose. Evidence bearing upon that question was sought to be introduced by defendant, but it was excluded by the district

judge (he was justified in doing so in view of the discussed obiter dictum) on the ground of irrelevancy. In our opinion the evidence was relevant, and it should have been received.

The case will be remanded to the district court, therefore, for the restricted purpose of receiving from either party litigant any competent evidence relating to the reason for the separation and living apart of plaintiff and decedent. After the further hearing if the court concludes that this plaintiff was free from fault, it shall reinstate the judgment signed by it on April 5, 1948; if otherwise it shall reject plaintiff's demands and dismiss the suit. From the court's decree, however, the right of further appeal is reserved to the litigant adversely affected.

For the reasons assigned the judgment appealed from is reversed and set aside and the case is remanded for further proceedings according to law and consistent with the views herein expressed. Each litigant shall pay one-half of the costs of this appeal. All other costs shall await the final determination of the litigation.

McCALEB, J., dissents with written reasons.

O'NIELL, C. J., takes no part.

McCALEB, Justice (dissenting).

I am in accord with the views expressed in Veillon v. Lafleur's Estate, 162 La. 214, 110 So. 326; Succession of Guillon, 150 La. 587, 91 So. 53 and Succession of Nagan, 150 La. 934, 91 So. 303.

Article 2382 of the Civil Code is unambiguous; the right granted is not conditioned upon faithfulness during marriage nor is recovery dependent upon the spouses living together.

Since the statute is clear, its letter should not be disregarded "under the pretext of pursuing its spirit". Article 13, Civil Code. The effect of the decision herein is to amend Article 2382 by providing that the marital fourth is not recoverable where the spouses were living apart at the time of the dissolution of the marriage by death unless the sole cause of the separation is attributable to the decedent.

I respectfully dissent.