571 So.2d 813 (1990)
Waldo E. FRANCOIS
v.
James D. TUFTS, II (a/k/a J.D. Tuffts, II).
SUCCESSION OF Waldo Emerson FRANCOIS.
SUCCESSION OF Waldo E. FRANCOIS, a/k/a Waldo Emerson Francois.
Dorothy WEISFELD, et al.
v.
J.D. TUFTS, II, etc.
Nos. 89-CA-1472, 89-CA-1473, 89-CA-1474 and 89-CA-1475.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1990.
Writ Denied February 8, 1991.
*814 Arthur L. Ballin, and Moise W. Dennery, Lemle & Kelleher, New Orleans, for appellant Dorothy W. Francois.
K. Eric Gisleson, Steeg and O'Connor, New Orleans, for appellees J.D. Tufts, II, Linda Tufts Hebbler, Robert G. Tufts, and Frederick J. Tufts.
H. Gordon Hartman, New Orleans, for appellees Jean Nelson McEvoy and Richard Eric Nelson.
A.D. Freeman, Jr., New Orleans, for appellee Curator ad hoc for Milten J. Acker, III, Wiltz J. Bernard, Jr., J. David Tufts, III, Lilly May Bonfield and Thomas N. Tufts.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This appeal arises out of several consolidated cases concerning the succession of the late Waldo E. Francois (Francois). In the case currently before this Court, Plaintiff/Appellant Dorothy Weisfeld Francois (Dorothy), wife of the deceased, brought suit against defendants/appellees J.D. Tufts, II (Tufts), and thirteen other heirs, in the Civil District Court for the Parish of Orleans. She made three requests: (1) that she be placed in possession of the marital portion, (2) that she receive an interim allowance, and (3) that she be placed in possession of certain negotiable bonds which she asserts were donated to her. The trial judge denied all three requests. Dorothy now appeals.

FACTS:
On October 6, 1982, shortly after the death of his wife of 53 years, Francois executed an Irrevocable Inter Vivos Trust (Trust) in favor of Tufts, his nephew/trustee, and thirteen other nieces and nephews. The corpus of the Trust was composed entirely of municipal bonds with a total face value of $940,000.00. While the Trust was executed before two witnesses, it was not duly acknowledged before a notary public by one of the attesting witnesses until June of 1983.
On October 14, 1982, a statutory will naming J.D. Tufts as executor was executed by Francois.
*815 In December of 1982, Waldo Francois met Dorothy. They were married on March 4, 1983. On March 14, 1983, Francois allegedly executed an olographic will stating in part, "I leave all I die possessed to my beloved wife Dorothy Weisfeld Francois."
On April 11, 1983, Francois suffered a stroke, and was hospitalized. On April 21, 1983, Francois allegedly executed a statutory will which stated in part, "I leave and bequeath all of my property, both immovable and moveable, corporeal and incorporeal to my wife Dorothy Weisfeld Francois." In May of 1983 Francois made an alleged donation of bonds to Dorothy.
In late June/early July 1983, Francois was placed in the Touro Infirmary Psychiatric Ward, diagnosed as being psychotic, incompetent and suffering dementia. On July 14, a petition in the name of Francois against Tufts asking that the Trust be declared null and void was filed. No mention of incompetence was made.
On October 15, 1983, Francois died.
The October 14, 1982 will was probated on October 18, 1983, with Tufts named as executor. Soon thereafter, Dorothy attempted to probate both the March 14, 1983 olographic will, and the April 21, 1983 statutory will.
On December 24, 1984, the Civil District Court for the Parish of Orleans ruled that the April 21, 1983 statutory will and the March 14, 1983 olographic will were both invalid. The court held that Francois' property was to be disposed of in accordance with the October 6, 1982 Trust, and the October 14, 1982 statutory will.
On June 6, 1985, Dorothy filed a petition for the marital portion.
On May 12, 1986, this court affirmed the trial court's decision regarding the validity of the Trust and the October 14, 1982 statutory will, stating the Trust to be "valid and complete when it was executed." Francois v. Tufts, 491 So.2d 673, 676 (La. App. 4th Cir.1986), writ den. 497 So.2d 308.
On May 21, 1987, Dorothy filed a petition for Declaratory Judgment alleging ownership of certain non-trust bonds.
On February 10, 1989, the Civil District Court for the Parish of Orleans rendered judgment denying the marital portion and any corresponding interim allowance, and ruling that the donation of the non-trust bonds was invalid due to lack of capacity of the donor, and failure by the donee to prove delivery.
On February 28, 1990, Dorothy filed the instant appeal.
The issues for our determination are whether Dorothy is entitled to the marital portion and whether the donation of bonds to her in May of 1983 is valid.

MARITAL PORTION
Civil Code article 2432 provides:
"When a spouse dies rich in comparison with the surviving spouse, the surviving spouse is entitled to claim the marital portion from the succession of the deceased spouse."
Dorothy advances several arguments as to why she is entitled to the benefits of the above article. First she claims that Francois' estate must fictitiously add to its mass the value of the bonds donated in trust. She claims that even though the trust has been held valid by this court,[1] its effective date is June 23, 1983, the date it was duly acknowledged by the subscribing witness and not October 6, 1982 the date executed by Francois. Because the trust took effect within one year of Francois' death, Dorothy cites La.R.S. 47:2406 as authority for adding its value to the mass of the estate.
In addition, she argues that a surviving spouse should not be deprived by the other spouse of the absolute right to share in the estate of the deceased by giving away during his lifetime the bulk of his assets. In support she cites Malone v. Cannon, 215 La. 939, 41 So.2d 837 (1949).
Dorothy concludes with the assertion that by fictitiously adding the trust bonds to the value of Francois' estate, it would have a net value of $1,018,539.62 rather than the $235,322.00 reflected on the descriptive *816 list. Using her valuations, she urges that Francois died "rich" in comparison to her and thus she is entitled to her marital one-fourth.[2] For several reasons, we reject these arguments.
La.R.S. 47:2406 has absolutely no application to the issue before us. That statute provides for the method of computing inheritance taxes where an inter vivos gift is made within one year of decedent's death. It provides for a rebuttable presumption that the gift was made in contemplation of death, and unless overcome by sufficient evidence to the contrary, "... shall be deemed a part of the succession of the person who has so donated or alienated the property for purposes of computing the inheritance tax due by the succession, legatees or heirs of the person." Clearly, the statute has no bearing on an estate's value for purposes of determining whether the marital portion is applicable. Its sole purpose is the computation of inheritance taxes. Therefore, irrespective of the effective date of the trust, Dorothy's reliance on this statute has no merit.
Dorothy urges, however, that Malone v. Cannon, supra, supports her position that a decedent cannot, by inter vivos donation, deny the surviving spouse of the benefits the law obligates an estate to provide under the circumstances of Article 2432.
Malone v. Cannon held, inter alia, that a surviving spouse had the right to seek the marital portion even though the decedent spouse had, by last will and testament, left her entire estate to her mother. The court observed that the right "... to claim it [marital portion] in a judicial proceeding is not the same as to sue for the reduction of a donation under Article 1504."[3] Because the case was remanded to the trial court on other grounds, there is no further expression of whether or not a surviving spouse has the right to collate or reduce inter vivos donations to determine the decedent's estate for marital portion purposes.
We have not been referred to any article of the civil code or statute, and we know of none, which authorizes the fictitious adding of donations to a decedent's estate for marital portion purposes. The code clearly limits collation and reduction of donations to forced heirs. C.C. articles 1235, 1236, 1504. We do not dispute, as Dorothy argues, that the marital portion is an incident of the matrimonial regime and a charge on the succession of the deceased spouse. We can envision extreme situations that might occur where justice may require the reduction or collation of a deathbed donation in determining if the marital portion is applicable. However, we need not make a definitive ruling on that crucial legal issue in this case. Under any of the scenarios advanced by Dorothy we determine that she has failed to satisfy the requirements which would entitle her to the marital portion.
The nature of the right to claim the marital portion has been described by our Supreme Court as follows:
"... the right conferred by the article... is in [the] nature of a charity or bounty of the surviving consort left in penurious circumstances.... The fourth is given in honor of the past marriage, that the survivor be retained in the previous accustomed rank and condition." Succession of Lichentag, 363 So.2d 706 (La.1978)
Thus, "... one spouse is not to be deprived, by reason of the other's death, of a standard of living similar in style, comfort and elegance to that existent during the marriage." Succession of Ziifle, 378 So.2d 500, 501 (La.App. 4th Cir.1979), writ denied, 381 So.2d 1223 (1980). The object of the marital fourth is "... to prevent a spouse on the death of the other from being left in *817 abject poverty after having become accustomed to the wealth of the decedent." Malone v. Cannon, supra, 41 So.2d at 843. The question of whether one spouse dies "rich" in comparison to the other is relative. See, C.C. Art. 2432, comment (c). It requires the court to not only compare the patrimonial assets of the deceased with those of the survivor, but also requires a determination of the effect a spouse's death has on the lifestyle of the survivor. Id.; Succession of Ziifle, supra. The time for making those determinations is the date of death of the spouse. Malone v. Cannon, supra; Succession of Kunemann, 115 La. 604, 39 So. 702 (1905), Succession of Monroe, 494 So.2d 336 (La.App. 4th Cir. 1986). Although there is no precise formula to guide the courts in comparing the relative wealth of the two estates, it has been generally recognized that "five to one" is the minimal ratio they will consider. Smitherman v. Smitherman, 240 So.2d 6 (La.App. 2nd Cir.1970).
The trial court found that Dorothy had assets valued at $267,221.83[4] as of October 15, 1983, the date of Francois' death. Assuming arguendo that the trust is considered in computing Francois' estate,[5] its valuation would be $1,013,539. The relative comparison between the two would be 3.8 to 1, far below what the courts have heretofore considered the minimal.[6] More important, however, is the fact that there is no evidence that Dorothy's lifestyle changed on Francois' death.
Francois and Dorothy were married on March 4, 1983. Francois died on October 15, 1983. For approximately two days in April, they were separated. Dorothy returned on April 12th. On that date Francois had a stroke and was hospitalized through April 23rd. He was also hospitalized from approximately June 8th until his death, except for one and a half days. He was diagnosed as psychotic and suffering from severe memory loss. In September Dorothy filed a petition for Francois' interdiction. Her testimony at an earlier hearing in 1984[7] reflects the rather "bad times," as she describes it, she had during the short period of her marriage with Francois. There is no evidence which shows a "wealthier" lifestyle change after her marriage, nor any which shows she was required to drastically reduce her style of living after Francois' death. To the contrary, the evidence shows she had a home in Metairie valued at $193,000.00, plus two automobiles, jewelry, and at least $12,000.00 in the bank.
In addition, prior to her marriage, Dorothy was employed at Mercedes-Benz as a salesperson, a job which she retained throughout most of her marriage, and for a year after Francois' death. At the time of his death she was earning $2,000.00 per month.
Dorothy argues, however, that the trial court erred in computing the value of her estate by failing to consider her liabilities as reflected on Exhibits 2 and 3, and in computing the correct balance in her bank account. The court found that Dorothy's assets at the time of Francois' death totaled $267,221.83.
Dorothy claims that she had a negative balance of $75.71 in her bank account as of the date of Francois' death. She urges that the balance of $12,141.83 was not achieved until one month later. Candidly, *818 the evidence is confusing on this point. The testimony refers to an exhibit S-4 which is not in the record. However, it appears that Dorothy received $7,500.00 as the widow's allowance two days after Francois' death, and $10,000.00 in insurance proceeds. Apparently these sums were placed in the account. The trial court erred by listing the insurance proceeds as a separate item since they were already included in the bank balance. However, we conclude that the $10,000.00 reduction in asset valuation is not sufficient to alter our ultimate decision in this matter.
With respect to the liabilities, the only evidence of the existence of the mortgages, their execution date (whether before or after the marriage) and, more important, their balances as of Francois' death, is the self serving testimony of Dorothy which the trial court rejected. The same is true for the outstanding insurance loans listed on the statements written by her.
Obviously, with respect to these issues, the trial court made a credibility call which we cannot say is manifestly erroneous. In its reasons for judgment, the trial court stated that, "the Court finds that mover has simply failed in her burden to produce competent and/or credible evidence which would establish her debts, and in turn refute the value of her assets, as of the date of death, October 15, 1983."
We find no error by the trial court in rejecting Dorothy's claim for the marital portion.

THE INTERIM ALLOWANCE
Pursuant to La.C.C. Art. 2437, the surviving spouse will be entitled to a periodic allowance, when during the administration of the succession, it appears that the surviving spouse will be entitled to the marital portion. Because we conclude she is not entitled to the marital portion, the trial court was correct in denying an interim allowance.

THE NON-TRUST BONDS
The trial court held that the manual donation by Francois to Dorothy of certain non-trust bonds with a face value of $100,000.00 was invalid because Francois was without the mental capacity to make a gift nor was there proof of delivery. We disagree.
There is a presumption of competency which places the burden of proof upon the opponent of the donation. The question of a "lucid interval" arises only if incompetency is established in the first instance. In this case the presumption of competency was never overcome by appellees so that the question of a "lucid interval" was never properly before the court.
In concluding Francois lacked mental capacity the trial court relied on this Court's decision in the previous case between the parties. Francois v. Tufts, supra. In that case, the question was whether Francois was competent to execute a statutory will on April 21, 1983. This court analyzed the evidence on both sides of the controversy and resolved the question on the basis of Dr. Adriani's testimony. A pharmacologist, he testified that Francois was incompetent to execute a valid will on April 21, 1983 because of the drugs he was given between the time he was admitted to the hospital on April 12 and the date of the will. Id. at page 678. The question before us is whether Francois was competent to make a valid donation on May 13. There is nothing in the record to suggest that he took these incompetency-producing drugs after April 21. Consequently, there was no evidence to rebut the presumption that Francois was competent to make a valid donation of the bonds to appellant. The trial court committed reversible error in placing the burden on Dorothy to prove a lucid interval under these circumstances. The burden was on Tufts all along to prove Francois' incompetence and they failed to carry it. In fact, they offered no evidence at all. That Francois was subsequently hospitalized on June 8th has no probative value as to his competency four weeks earlier.
The trial court also found no evidence of manual delivery of the bonds. In doing so the court seemed to invoke some sort of an adverse presumption against Dorothy for failing to call as witnesses her *819 lawyer and his secretary who, she said, were present when the delivery was made. No such adverse presumption was applicable. Dorothy testified that Francois gave her the bonds. That testimony is corroborated by that fact that they were in her possession when Francois died and turned over to the executor by her. There was no evidence to the contrary. Under these circumstances we conclude that Dorothy's failure to call witnesses whose testimony would simply be cumulative does not negate the positive proof of delivery.
We therefore affirm that portion of the trial court judgment which denied Dorothy the marital portion, and reverse that portion which invalidated the donation.
AFFIRMED IN PART; REVERSED IN PART.
SCHOTT, Chief Judge, concurs in the result:
I completely agree with the analysis and conclusion of my colleagues with respect to the error of the trial court in declaring as invalid the donation of the bonds to appellant. I likewise agree that the trial court's computation of the value of appellant's estate without regard to the alleged mortgage balances was not manifestly erroneous.
In the light of these findings appellant's estate was worth far more than an amount which would entitle her to the marital fourth.
In any event, I find no merit in appellant's argument that Francois' premarital donation of the bonds to the trust did not take effect until the instrument was acknowledged in June. This flies in the face of this court's previous opinion by which we are bound. A widow claiming the marital fourth has no standing to attack donations made by her husband before they were married.
PLOTKIN, Judge, concurs with the result and assigns written reasons:
Although I believe that the majority reached the correct result on all the issues presented by this complicated successions case, I disagree with the reasons assigned on several of the issues. Thus, I respectfully concur.
This case is the latest of several conflicts between the same parties concerning the succession of Waldo E. Francois. The litigants include the decedent's widow, plaintiff Dorothy Weisfeld Francois, and his nephew, J. D. Tufts, who is also the executor of his estate and the representative of Mr. Francois' other nieces and nephews, all of whom are beneficiaries of a trust established by the decedent. In this action, Mrs. Francois seeks two things: (1) a declaration that she is the owner of some nontrust negotiable bonds allegedly given to her by Mr. Francois in an inter vivos manual donation and (2) a declaration that she is entitled to a marital portion and an interim allowance.
Factually, the case is very complex; however, the operative facts for deciding the issues involved in this particular action can be briefly summarized as follows: On October 6, 1982, Mr. Francois signed a document creating an irrevocable inter vivos trust, naming Mr. Tufts executor. The document was notarized sometime between January 1 and August 10, 1983. Mr. Francois and the plaintiff were married on March 4, 1983. Thereafter, the trust was duly acknowledged by one of the witnesses as required by law on June 13, 1983. Mr. Francois died on October 15, 1983.

Donation of Bonds
The trial court found that Mrs. Francois had failed to prove a valid inter vivos donation of $96,292.38 in non-trust bonds. This decision was based on the fact that in a prior action, the courts in this state ruled that Mr. Francois was incompetent to execute a statutory will on April 21, 1983. The trial court reasoned that since Mr. Francois was incompetent on April 21, 1983, and Mrs. Francois alleged that the manual donation occurred on May 13, 1983, Mrs. Francois had the burden of proving a "lucid interval" before the donation could be considered valid.
The majority has reversed on this issue, invoking the presumption of capacity and *820 finding that Mrs. Francois had no obligation to prove a "lucid interval." This decision is based on evidence from the previous trial that Mr. Francois' incapacity on April 21 was caused by a drug administered sometime between April 12 and that date. The majority concludes correctly that there is no record evidence whatsoever that Mr. Francois was incompetent on May 13.
I agree with this analysis. Additionally, I believe that testimony presented in this action proves overwhelmingly that Mrs. Francois is entitled to the bonds. The evidence is uncontroverted that Mr. Francois manually delivered the bonds to Mrs. Francois in her attorney's office and that she immediately placed those bonds into a safety deposit box to which she was the only person with access. See Succession of Young, 563 So.2d 502 (La.App. 4th Cir. 1990).
For these reasons plus those given by the majority, I concur in the decision reversing the trial court's judgment denying Mrs. Francois possession of the non-trust bonds.

Marital Portion
A surviving spouse's right to a marital portion is established by La.C.C. art. 2432 et seq. La.C.C. art. 2432 provides that a surviving spouse is entitled to a marital portion if the decedent died "rich in comparison with the surviving spouse." If the decedent had no children, the amount of the marital portion is one-fourth of the value of the succession. La.C.C. art. 2435. The right to an interim allowance during the administration of the succession is premised on the right to receive a marital portion. La.C.C. art. 2437. The caselaw has established that the time for determining the survivor's right to a marital portion is the date of death. Malone v. Cannon, 215 La. 939, 41 So.2d 837, 840 (La.1949).
After hearing all the evidence in the instant case, the trial court determined that on the date of death, October 15, 1983, Mr. Francois' estate was valued at $235,322, while Mrs. Francois' estate was valued at $267,221.83. On the basis of these findings, the trial court denied Mrs. Francois' petition for a marital portion and an interim allowance. Mrs. Francois contests this conclusion, arguing that the trial judge's calculations of both her late husband's estate and her own estate were incorrect. Mr. Francois' Estate
Mrs. Francois' attempt to prove that the calculation of Mr. Francois' estate was incorrect is based on her attempt to traverse the descriptive list filed by Mr. Tufts as executor of the estate and accepted by the trial court as prima facie proof of the value of the estate. Her attempt to traverse the descriptive list is based on her contention that the negotiable bonds which represent the corpus of the trust, valued at $783,217.62, should have been included on the list. That contention is itself premised on two arguments: (1) That the trust was not "executed" until it was acknowledged by the witness on June 23, 1983 and (2) since the trust was executed within one year of the decedent's death, the value of the bonds which form the corpus of the trust should be added back into the estate under the provisions of LSA-R.S. 47:2406.
This court has previously held that the trust was "valid and complete when it was executed." Francois v. Tufts, 491 So.2d 673, 676 (La.App. 4th Cir.), writ denied 497 So.2d 308 (La.1986). However, that opinion failed to state whether the trust was executed on the date it was signed by Mr. Francois on October 6, 1982, or on the date that the instrument was duly acknowledged by the witness on June 23, 1983. Mrs. Francois argues that the trust was executed on the date of the witness' acknowledgment, while Mr. Tufts argues that it was executed on the date it was signed by the decedent. The opinion writer neglects to definitively decide this issue; however, the concurring judge finds that the trust took effect when the decedent signed the instrument and states that the plaintiff has no standing to attack donations made by her husband before they were married. I disagree with both analyses.
LSA-R.S. 9:1752, relative to creation of inter vivos trusts, states that they are created *821 "only by authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses." That language clearly requires that the trust be acknowledged by one of the witnesses before a valid trust is created. Thus, I would agree with Mrs. Francois on this issue and would hold that the trust was not executed until the witness acknowledgment occurred on June 13, 1983. In either case, I do not believe that Mrs. Francois lacks capacity to attack the donation.
However, like the majority, I disagree with Mrs. Francois' contention that the value of the corpus of the trust should be added into the estate under the provisions of LSA-R.S. 47:2406. LSA-R.S. 47:2406 establishes a presumption that donations made within a year of death, based on inadequate consideration, were made in contemplation of death for purposes of calculation of estate taxes. The majority states correctly that that statute has absolutely no application in the determination of whether a surviving spouse is entitled to a marital portion. However, I disagree with the majority's speculation that some type of "collation or reduction" to a decedent's estate for purposes of determining entitlement to a marital portion might be required in some "extreme situations." Nothing in Louisiana law justifies such speculation. Collation and reduction are clearly limited to actions involving forced heirs; a surviving spouse could never be entitled to their benefits regardless of the situation.
In summary, I agree with the majority's conclusions that Mrs. Francois failed to traverse the descriptive list and with this acceptance of the trial court's valuation of Mr. Francois' estate at $235,322, as reflected by the descriptive list. However, since we have decided that Mrs. Francois is entitled to ownership of the non-trust bonds, the value of the estate must be reduced by $96,292.62, making the value of the decedent's estate for calculation of the marital portion $139,029.38.

Mrs. Francois' Estate
I disagree with both the trial court and the majority in the proper calculation of Mrs. Francois' estate. In valuing Mrs. Francois' assets at $267,221.83, the trial court rejected Mrs. Francois' testimony concerning three mortgages against her home on Livingston Street in Metairie. The majority accepted the trial court's judgment on this issue. Mrs. Francois' estate is reduced $10,000 by the majority because a life insurance policy was counted twice by the trial court. Additionally, the majority awarded Mrs. Francois the nontrust bonds, increasing her estate by $96,292.38. Thus, Mrs. Francois' estate, without regard to the mortgages, should be calculated as follows:

 $267,221.83 (Trial judge's calculation)
 - 10,000.00 (Insurance proceeds)
 -----------
 $257,221.83
 + 96,292.38 (Value of non-trust bonds)
 -----------
 $353,514.21 TOTAL

After reading the record, I would hold that Mrs. Francois met her burden of proving that she had three mortgages against her home. At trial, Mrs. Francois testified from the bank books representing those mortgages and stated that she had liabilities against the house totalling $293,759.05 at the time of Mr. Francois' death on October 15, 1983. Additionally, Mrs. Francois placed into the record copies of two balance sheets which listed her assets and liabilities in detail. During the trial, the parties discussed supplementing the record with copies of the original mortgages; it is unclear whether Mrs. Francois' attorney or Mr. Tufts' attorney had the responsibility of securing those copies, but apparently it was never done. However, the bank books possessed by Mrs. Francois on the day of trial were the best evidence of the amount due on the date of death; the original mortgages would have reflected only the total amount of money borrowed. Uncontroverted evidence should be taken as true in the absence of some showing that the evidence is false or unreliable. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979). Appellate courts are not required to accept a trial court's refusal to *822 accept uncontroverted testimony "where the record indicates no sound reason for its rejection." Id. In the instant case, not only does the record "indicate no sound reason" for the rejection of Mrs. Francois' testimony, her testimony is actually supported by the objective evidence of her bank book balances. Therefore, I would reduce the value of Mrs. Francois' estate by $293,759.05 to reflect the value of the mortgages on the house on Livingston Street that were proven at trial. I would calculate Mrs. Francois' estate as follows:

 $353,514.21 (Total assets)
 - 293,759.05 (Total liabilities)
 ------------
 $ 59,755.16.

Entitlement to Marital Portion
Under my analysis, the relative values of the estates of Mr. and Mrs. Francois on the date of death would be $139,029.62 and $59,755.16, respectively. Thus, the ratio of Mr. Francois' estate to Mrs. Francois' estate is less than three to one, and far less than the five-to-one rule pronounced by the majority. However, I disagree with the majority's adoption of that rule, which was stated in Smitherman v. Smitherman, 240 So.2d 6, 9 (La.App. 2d Cir.1970). In that case, the second circuit listed pre-1970 cases in which a surviving spouse claimed entitlement to a marital portion and concluded that the smallest ratio in which the marital portion was allowed was five-toone. Nonetheless, despite the fact that reference to the ratio is made in the comments to La.C.C. art. 2432, a study of the relevant jurisprudence reveals that it has not been officially adopted by other courts. In fact, this court has previously rejected the strict application of the ratio, noting in Succession of Ziifle, 378 So.2d 500 (La. App. 4th Cir.), writ denied 381 So.2d 1223 (La.1980) that "by its own terms, [the ratio] becomes patently ridiculous when carried to an extreme." Id. at 501.
The purpose of the marital portion provisions is "to prevent a spouse on the death of the other from being left in abject poverty after having become accustomed to the wealth of the decedent." Malone, supra, 41 So.2d at 843. Thus, determination of whether one spouse died "rich" in comparison to the other should be made on the basis of an individual comparison of the patrimonial assets of the deceased with those of the survivor. Id. In this case, a comparison of the assets of the two spouses reveals that Mr. Francois did not die "rich" in comparison to Mrs. Francois. Therefore, for the reasons stated, I concur in the majority's decision affirming the trial court on this issue.
NOTES
[1] Francois v. Tufts, supra.
[2] Civil Code Article 2434 provides that when a decedent leaves no children, as in Francois' case, and the surviving widow is entitled to the marital portion, that portion shall be one-fourth of the estate, not to exceed one million dollars.
[3] Civil Code article 1504 provides that "... the reduction of the donation, whether intervivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns;". Thus, the defendants unsuccessfully argued in Malone that the surviving spouse was precluded from seeking reduction of the decedent's testamentary dispositions.
[4] For purposes of our discussion we use the trial court's figures which do not include the value of the donated non-trust bonds. Even though, for the reasons stated later in this opinion, we conclude Dorothy owns these bonds, that factor is not considered in our rejection of the marital portion.
[5] It is not necessary that this Court reach a conclusion on the issue of when the trust became effective. Although Judge Plotkin, in his concurring opinion, reaches a result on this issue, it makes no difference in the reasoning supporting his result, nor does it make a difference in this writer's result. That issue is simply not necessary to decide this case.
[6] We do not suggest that the jurisprudence has "carved in stone" the five to one ratio, nor do we pronounce it as a definitive guideline, as the concurring opinion of Judge Plotkin suggests. Smitherman is cited for illustrative purposes. The more important reasons for this decision is the lack of evidence in Dorothy's lifestyle change.
[7] The transcript of the previous proceeding was introduced in evidence in the instant matter.