# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of June, 2024** are as follows:

**BY Crain, J.:**

2023-CQ-01596          *ANGELA PICKARD, ET AL.  VS.  AMAZON.COM, INC.*

CERTIFIED QUESTIONS ANSWERED. SEE OPINION.

Hughes, J., dissents and assigns reasons.
Genovese, J., dissents in part and assigns reasons.
McCallum, J., dissents.

# SUPREME COURT OF LOUISIANA

## No. 2023-CQ-01596

## ANGELA PICKARD, ET AL.

## VS.

## AMAZON.COM, INC.

On Certified Question from the United States District Court for the Western District of Louisiana Shreveport Division

**CRAIN, J.**

This case presents two certified questions affecting Amazon.com, Inc., the operator of an online marketplace, relative to injuries caused by a third-party's product sold through the marketplace. The first question asks whether the operator is a "seller" under the Louisiana Products Liability Act. We answer that question in the affirmative. The second question asks under what circumstance, if any, the operator may be liable under the theory of negligent undertaking. We hold that, generally, an operator may be liable for injuries if, subject to standards established by this court's precedent, the operator assumed a duty to identify and remove unreasonably dangerous products from its marketplace.

## FACTS AND PROCEDURAL HISTORY

Certified questions are decided on the facts presented by the federal court. *See Menard v. Targa Res., L.L.C.*, 23-0246 (La. 6/27/23), 366 So. 3d 1238, 1240. This suit arises out of an allegedly defective battery charger purchased by Archie Pickard through Amazon.com. The charger allegedly malfunctioned and ignited a fire that spread throughout Pickard's home. Pickard was severely burned and died from his injuries. His survivors sued Amazon.com, Inc. and related entities (collectively "Amazon") in the Western District Court of Louisiana. In relevant part, petitioners assert causes of action under the Products Liability Act and negligent undertaking.

*See Pickard v. Amazon.com, Inc.*, 5:20-CV-01448 (W.D. La. Nov. 27, 2023), 2023WL8191903.

As explained in the certification, Amazon's website includes products sold by Amazon as the retailer and by third parties. The subject charger was sold by a third party identified as "Jisell," not Amazon. To use Amazon's website and payment system, Jisell paid Amazon a fee and provided a description of the product, the price, and any required labels and warnings. Jisell was then responsible for importing and properly packaging its product. The product listing for the subject charger expressly stated it is "sold by" Jisell.

Jisell paid an additional fee for an optional service called "Fulfillment by Amazon," where products are sent to an Amazon warehouse for storage and processing. When an order is placed, Amazon retrieves the pre-packaged product from its warehouse, places it in a shipping container or applies a shipping label to its box, and delivers or arranges delivery of the product to the buyer. Using this service, Jisell delivered Amazon its product, but never transferred ownership to Amazon. Amazon listed the product on its website, physically stored the product, received payment for Jisell, and delivered the product to the purchaser. *See Pickard*, 2023WL8191903 at *2.

Amazon filed a motion for summary judgment. In response, the Western District Court certified two questions:

> (1) Under Louisiana products-liability law, is the operator of an online marketplace a "seller" of third-party products sold in its marketplace when the operator did not hold title to the product but: (i) had physical custody of the product in its distribution warehouse; and (ii) controlled the process of the transaction and delivery through its product fulfillment program?
>
> (2) Under what circumstances, if any, would the operator of an online marketplace who voluntarily adopts safety procedures for the products sold through its website by third-party sellers, be liable for injuries sustained by the purchaser of a defective product based on a theory of negligent undertaking?

2

*Pickard*, 2023WL8191903 at \*7. We accepted certification. *See Pickard v. Amazon.com, Inc.*, 23-01596 (La. 2/14/24), 379 So. 3d 19; *see also* La. Sup. Ct. Rule XII; La. R.S. 13:72.1.

## DISCUSSION

*Question 1: Is Amazon a "Seller" under Louisiana Products Liability Act*

The Products Liability Act only applies to manufacturers. *See* La. R.S. 9:2800.52. Generally, a manufacturer is "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. R.S. 9:2800.53(1). "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. *Id.*

By definition, a manufacturer includes a seller in two circumstances: (1) when the seller exercises control over a characteristic of the product's design, construction, or quality; and (2) when the seller imports and distributes products of a foreign manufacturer if the seller is the manufacturer's alter ego. La. R.S. 9:2800.53(1)(b) and (d). More specifically, the statute provides:

"Manufacturer" also means:

\* \* \*

(b)     A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

\* \* \*

(d)     A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United

3

States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. R.S. 9:2800.53(1)(b) and (d).[1]

A "seller" is then defined as:

[A] person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.

La. R.S. 9:2800.53(2).

The certified question asks whether Amazon is a seller of the subject battery charger. To answer that question, we must interpret the word "possession" in the definition of seller. However, as pointed out above, the "seller" determination, alone, does not subject a party to liability under the Products Liability Act. To be liable, a seller must meet the additional statutory requirements of the applicable "manufacturer" definition. *See* La. R.S. 9:2800.52; 9:2800.53(1)(b) and (d). The scope of the Act is thus ultimately controlled and limited by the more restrictive "manufacturer" definition.

We apply well-established rules of statutory construction to interpret Subsection 9:2800.53(2). The words of a law must be given their generally prevailing meaning. La. Civ. Code art. 11. Words and phrases shall be read in context and construed according to the common and approved usage of the language. *See* La. R.S. 1:3; La. Civ. Code art. 12; *Luv N' Care, Ltd. v. Jackel International Limited*, 19-0749 (La. 1/29/20), 347 So. 3d 572, 577. However, technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. La. R.S. 1:3; *see also* La. Civ. Code art. 11. In determining

---

[1] A manufacturer also more broadly includes a "person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. R.S. 9:2800.53(1)(a).

4

the meaning of a word, phrase, or clause, the entire statute is to be considered. *Luv N' Care, Limited*, 347 So. 3d at 578.

Dictionaries can be a useful source for determining the common and approved usage of words. *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138 (La. 5/20/03), 851 So. 2d 959, 964. As petitioners point out, Merriam-Webster defines "possession" as "the act of having or taking into control . . . without regard to ownership." *See* Merriam-Webster Dictionary (2024).

Context and legislative intent are also important. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code art. 12. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Legislative history may be considered in determining legislative intent. La. R.S. 24:177B(2)(a).

As explained earlier, Amazon's alleged seller status arises in the context of Subsection 9:2800.53(1)(d), which defines a manufacturer to include a seller acting as the alter ego for a foreign manufacturer. A drafter of the legislation explained the purpose of this subsection:

> [A] seller may be the only defendant available to the plaintiff if the alien manufacturer, because of his foreign status, is not subject to service of process or is immune from enforcement of a judgment. In those circumstances the seller-importer or seller-distributor who is the alien manufacturer's alter ego should bear the loss, not the consumer plaintiff. Furthermore, a version of the rule articulated in section 2800.53(1)(d) already applies in redhibition claims in Louisiana as a result of the Louisiana Supreme Court's decision in *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.* There is no compelling reason why the rule ought not to apply in products liability disputes as well.

John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 575-76 (footnotes omitted).

In *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.*, 262 La. 80; 262 So.2d 377 (1972), which predated the adoption of the Products Liability Act, this court found a domestic distributor of a foreign automobile manufacturer to be a manufacturer for purposes of redhibition. *Media Production*, 262 La. at 89; 262 So. 2d at 380. In addition to marketing the vehicles, the domestic distributor inspected, adjusted, and prepared the automobiles for sale and delivery to dealerships. *Id.* The Act's definition of manufacturer would include this factual scenario.

An operator of an online marketplace who, as described in the certified question, "had physical custody of the product in its distribution warehouse" and "controlled the process of the transaction and delivery" necessary to convey ownership and possession of the product to the buyer can perform a similar role. Like the distributor in *Media Production*, the operator's involvement can form a substantial and material part of the transaction. If, as the Act requires for liability, the operator is the alter-ego of a foreign manufacturer, the operator should bear the loss for any injury caused by a defective product, not the consumer.

Considering all of the foregoing, including the dictionary meaning of "possession," its context in Section 9:2800.53, and the statute's purpose, we interpret "possession" in Subsection 9:2800.53(2) to mean physical custody and control of the product, without regard to ownership. The custody and control of the product need not be accompanied by an intent to own it, which is neither expressly nor impliedly required by Subsection 9:2800.53(2), and would serve no apparent purpose under the Act.

We reject Amazon's argument that the Civil Code's definition of possession should be applied to Subsection 9:2800.53(2). While the Civil Code defines possession, the word has been used "in at least three different senses" in property law. *See* Yiannopoulos & Scalise, 2 La. Civ. L. Treatise, *Property* § 12:2 (5th ed.).

6

As observed by former Justice Tate, "Indeed, much confusion has resulted in Louisiana from the use of the word 'possession' in the Civil Code and in the jurisprudence." *Liner v. Louisiana Land & Exploration Co.*, 319 So. 2d 766, 781 (La.1975) (Tate, J., concurring). Despite this confusion, it is generally recognized that possession "in the proper sense" for purposes of property law means both detention of the property (*corpus*) and an intent to own (*animus*). *See* La. Civ. Code arts. 3421, 3424 and 3436; Yiannopoulos & Scalise, at § 12:3; Symeonides, 44 La. L. Rev. at 146 n.20. The Products Liability Act, however, does not expressly incorporate this definition into the Act.

Amazon nevertheless maintains the Civil Code articles must be construed with the Products Liability Act because they "concern the same subject matter." "Laws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13. Laws govern the same subject matter and should be construed *in pari materia* when they "relate to the same person or things, or to the same class of persons or things, or . . . have a common purpose." *Malone v. Cannon*, 215 La. 939, 957; 41 So.2d 837, 843 (1949). Laws do not concern the same subject matter if their "scope and aim are distinct and unconnected." *Malone*, 215 La. at 957; 41 So.2d at 843. The *in pari materia* principle of Article 13

> simply suggests that statutes addressing a particular subject matter manifest a common legislative policy or legal concept. Thus, ambiguities, inconsistencies, and omissions properly may be resolved by looking to other statutes on the same subject.

Lamonica & Jones, 20 La. Civ. L. Treatise, *Legis. Law & Proc.* § 7:7 (2023-24 ed.)

The Civil Code possession articles and the Products Liability Act do not relate to the same class of persons or things, or share a common purpose. *See Malone*, 215 La. at 955-63; 41 So. 2d at 842-45. Their scope and aim are distinct and unconnected. *Id.* For these reasons, the Act should not be construed *in pari materia* with Articles

3421 and 3424 to interpret "possession" in Subsection 9:2800.53(2). *See Malone*, 215 La. at 955-63; 41 So. 2d at 842-45.

Arguing otherwise, Amazon contends the possession articles and the Products Liability Act concern the same subject matter because both are in "Book III," referring to Civil Code Book III and Title 9 Code Book III. Title 9 is not the Civil Code. It is a repository of legislation ancillary to the Civil Code and has been called a "dumping place of legislation." *See* A.N. Yiannopoulos, *Requiem for A Civil Code: A Commemorative Essay*, 78 Tul. L. Rev. 379, 403 (2003); A.N. Yiannopoulos, *Louisiana Civil Law: A Lost Cause?*, 54 Tul. L. Rev. 830, 843 (1980). We further note the "classification and organization of the sections of the Revised Statutes [are] made for the purpose of convenience, reference, and orderly arrangement, and no implication or presumption of a legislative construction shall be drawn therefrom." La. R.S. 1:12.

The vast size of Civil Code Book III likewise undermines Amazon's argument. The largest book of the Civil Code, Book III contains 25 titles and over 2,000 articles governing a wide variety of topics, including successions, general obligations, delictual obligations, matrimonial regimes, over a dozen nominate contracts from sale to mortgage, as well as possession and both acquisitive and liberative prescription. Within Book III itself, "possession" carries different meanings, with some articles adopting the definition in Louisiana Civil Code articles 3421 and 3423, and others using the more common, everyday meaning of the word.[2]

---

[2]    *See e.g.* La. Civ. Code art. 1310 (Title I Of Successions): "But the possession, necessary to support this action, must be in the names of the persons enjoying it, and for themselves; it can not be instituted by those who possess in the name of another, as tenants and depositaries." For an article using possession in its more common meaning, *see* La. Civ. Code art. 2614 (Title VII Sale): "The seller may stop delivery of the things in the possession of a carrier or other depositary when he learns that the buyer will not perform the obligations arising from the contract of sale or is insolvent."

The articles defining possession are in Title XXIII of Book III. The right of possession defined and governed by that title is *sui generis*. *See* Yiannopoulos and Scalise, 2 La. Civ. L. Treatise at § 12:8. It is a "matter of fact" to which the law attaches significant legal consequences, principally the accrual of other rights.[3] An intent to possess as owner is essential to the acquisition of those rights. *See* La. Civ. Code arts., 3475-76, 3488, 3490-91; Yiannopoulos and Scalise, 2 La. Civ. L. Treatise at § 12:12. In contrast, the Products Liability Act is in Title V of Code Book III of Title 9, named "Of Quasi Contracts, and of Offenses and Quasi Offenses." It creates an exclusive cause of action against manufacturers for damage caused by their product. *See* La. R.S. 9:2800.52. This right is also *sui generis*. *See* Crawford, *Louisiana Products Liability Act*, 36 La. B.J. 173 (1988). Primarily rooted in tort law, the Products Liability Act identifies conduct that is "fault within the meaning of Civil Code Article 2315." *See* La. R.S. 9:2800.52. The legislation was intended to "reintroduce . . . traditional products liability doctrine in Louisiana." *See* Senate Committee on Judiciary A, Transcript of May 17, 1988 Meeting, pp. 2, 5. Nothing in the Act or its legislative history indicate any connection to property law in general, or more specifically the law of possession and the accrual of rights associated therewith. We find no merit to Amazon's argument these laws should be interpreted *in pari materia* because they concern the same subject matter.

Amazon also asserts the common-usage interpretation of possession leads to absurd results because "it would sweep numerous service providers within the scope of liability, including . . . the Postal Service." We disagree. While a delivery service may have temporary possession or transient control of a product, that is not sufficient to subject the service provider to liability under the Act. As noted above and in the

---

[3]     *See* La. Civ. Code art. 3422; *Property* at § 12:9; La. Civ. Code arts. 486-88 (right to fruits or reimbursement), 3424 (right of possession), 3423 (right to be considered provisionally as owner), 3473-91 (ownership via acquisitive prescription); Editors' Notes, Exposé Des Motifs, La. Civ. Code Bk. III, T. XXIII.

certified question, Amazon, for a fee, provided a service that included collecting the payment for Jisell. To the extent that is relevant to determining seller status, that fact would distinguish Amazon from the Postal Service. Further, even if the delivery service was a seller, that status would not subject it to the Products Liability Act. The delivery service would have to be a seller-manufacturer, meaning it is the alter ego of a foreign manufacturer or exercised control or influence over a characteristic of the design, construction or quality of the product. *See* La. R.S. 9:2800.52(1)(b) and (d). In today's stream of commerce, the typical delivery service, including the U.S. Postal Service, satisfies none of those requirements.

The focus on the manufacturer, rather than the seller, is a distinguishing characteristic of our Act. *See* La. R.S. 9:2800.52; Kennedy, 49 La. L. Rev. at 571-73. Liability is imposed on a seller when it acts as a *de facto* manufacturer. *See* La. R.S. 9:2800.52(1)(b) and (d). For this reason, unlike some jurisdictions, we do not incorporate a title requirement into the definition of "seller." A title requirement limits a seller to a person who *owned* the product and (1) conveyed that ownership through a sale, or (2) otherwise transferred possession of the product through a non-sale transaction, such as a lease.[4] In defining a seller, Subsection 9:2800.53(2) refers to a "person" and does not require the person be the owner of the product, nor is such a requirement necessary where the only sellers subject to the Act are *de facto* manufacturers. *See* La. R.S. 9:2800.52(1)(b) and (d).

Amazon also relies on *Skaggs v. Amazon.com, Inc.*, 20-1089 (La. App. 1 Cir. 12/15/21), 334 So. 3d 780, *writ denied,* 22-00068 (La. 3/15/22), 333 So. 3d 1243, which is factually distinguishable. There, the court found Amazon was not a seller

---

[4] *See* Restatement (Third) of Torts: Prod. Liab. §§1 and 20 (1998); *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 103 (Tex. 2021); *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 835 Fed. Appx. 213 (9th Cir.2020); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135 (4th Cir. 2019); *Eberhart v. Amazon.com, Inc.*, 325 F.Supp.3d 393, 398 (S.D.N.Y.2018); *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, CV172738FLWLHG, 2018 WL 3546197, at \*8 (D.N.J. July 24, 2018).

10

under the Act because the product at issue "was shipped directly to [the buyers] from [the seller,] and Amazon never had the title to or possession of the [product]." *Skaggs*, 334 So. 3d at 789. Similarly, the lack of possession by the operator of an online marketplace in *Normand v. Wal-Mart.com USA, LLC*, 19-00263 (La. 1/29/20), 340 So. 3d 615, 626 distinguishes that case.

Answering the first certified question, we find under the Louisiana Products Liability Act, the operator of an online marketplace is a "seller" of third-party products sold in its marketplace when the operator did not hold title to the product but: (i) had physical custody of the product in its distribution warehouse; and (ii) controlled the process of the transaction and delivery through its product fulfillment program. We emphasize this holding is limited to the term "seller" as specifically defined in the Louisiana Products Liability Act. *See* La. R.S. 9:2800.53(2). We express no opinion whether the operator of an online marketplace is a seller in any other context.

*Question 2: Negligent Undertaking*

In the second certified question, we are asked:

Under what circumstances, if any, would the operator of an online marketplace who voluntarily adopts safety procedures for the products sold through its website by third-party sellers, be liable for injuries sustained by the purchaser of a defective product based on a theory of negligent undertaking?

A claim of "negligent undertaking" is based on the assumption of a duty. *See Bujol v. Entergy Servs., Inc.*, 03-0492 (La. 5/25/04), 922 So.2d 1113, 1128-29, *adhered to on reh'g* (11/19/06). Generally, one who does not owe a duty to act may assume such a duty by acting. *Hebert v. Rapides Parish Police Jury*, 06-2001 (La. 4/11/07), 974 So. 2d 635, 643, *on reh'g* (1/16/08); Maraist & Galligan, 1 La. Tort Law § 5.09[6] (2023). While the fountainhead of tort law in Louisiana is Civil Code article 2315, our legislature has not specifically addressed a cause of action for assumption of a duty. *See Langlois v. Allied Chemical Corp.*, 258 La. 1067, 1077;

11

249 So.2d 133, 137 (1971). To further define the contours of fault under Article 2315, this court has sometimes looked to the common law. *See Lemoine v. Wolfe*, 14-1546 (La. 3/17/15), 168 So. 3d 362, 367. For assumption of a duty, we have adopted the Restatement of Torts Second, §324A. *See Hebert*, 974 So. 2d at 643-44; *Bujol*, 922 So. 2d at 1128.[5]

Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a)     his failure to exercise reasonable care increases the risk of such harm, or
> (b)     he has undertaken to perform a duty owed by the other to the third person, or
> (c)     the harm is suffered because of reliance of the other or the third person upon the undertaking.[6]

A detailed review and application of this provision was done in *Bujol*, which has been called "a definitive Louisiana analysis" of Section 324A. *See* Crawford & Braun, 12 La. Civ. L. Treatise, *Tort Law* §4:6 n.5. In *Bujol*, this court applied Section 324A to find a parent corporation did not assume a duty to provide a safe working environment for its subsidiary corporation's employees. *Bujol*, 922 So. 2d at 1113. The *Bujol* court explained the legal standards and necessary proof to establish assumption of a duty and liability for the breach thereof. We find these standards applicable for determining if an operator of an online marketplace

---

[5]     For additional cases involving claims of assumption of a duty, *see LeBlanc v. Stevenson*, 00-0157 (La. 10/17/00), 770 So. 2d 766, 770; *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So. 2d 762, 769 n.7; *Mundy v. Department of Health & Human Resources*, 620 So. 2d 811, 813-14 (La. 1993) (citing §324A); *Blair v. Tynes*, 621 So. 2d 591, 598 (La. 1993), *on reh'g,* 625 So. 2d 1346 (La. 1993); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So. 2d 1364, 1371 (La. 1984) (citing §324A); *Dornak v. Lafayette General Hosp.*, 399 So. 2d 168, 170 (La. 1981). Although *Harris* cited §324A, it has been called "an ordinary negligence case" that imposed liability on a proprietor for the negligence of an employee security guard. *See Posecai*, 752 So. 2d at 769 n.7.

[6]     The Restatement contains a similar provision applicable when only two parties are involved. *See* Rest. Torts (Second) § 323.

12

assumed a duty owed by a third-party seller and is liable for any damages caused by the breach of that duty.

The analysis is generally divided into two steps. The first determination is whether a defendant assumed a duty. The defendant assumes a duty under Section 324A when undertaking the rendition of services to another, which the defendant should recognize as necessary for the protection of a third person. *Bujol*, 922 So. 2d at 1129. An affirmative or positive undertaking is required, and courts should consider the scope of the defendant's involvement, the extent of defendant's authority, and defendant's underlying intent. *See Bujol*, 2 So.2d 1113, 1131. Mere concern or minimal contact about safety matters are not sufficient to constitute an assumption of a duty. *See Bujol*, 922 So. 2d at 1131; *Hebert*, 974 So. 2d at 644. Superior knowledge and expertise regarding safety issues will not create a duty to guarantee safety. *See Bujol*, 922 So. 2d at 1133; *Hebert*, 974 So. 2d at 644. Likewise, inspections and safety recommendations, which are not mandatory or within defendant's authority to remediate, do not create such a duty. *See Bujol*, 922 So. 2d at 1133-34; *Hebert*, 974 So. 2d at 644.

If plaintiff proves defendant assumed a duty and failed to exercise reasonable care to perform the duty, the analysis moves to the second step where plaintiff must prove one of the following: (a) defendant's failure to exercise reasonable care increased the risk of harm to plaintiff, (b) defendant undertook to perform a duty owed by another to plaintiff, or (c) plaintiff's harm was suffered because plaintiff or the person who originally had the duty relied on defendant to perform the duty. *See Bujol*, 922 So. 2d at 1129. Each of those alternatives are further discussed below.

To establish an increase in the risk of harm under Subsection 324A(a), plaintiff must prove some change in conditions that increased the risk of harm over the level of risk that existed before defendant became involved. *Bujol*, 922 So. 2d at 1135. The second alternative, undertaking to perform a duty, is more stringent

13

than the "positive undertaking" requirement in the first step of the analysis. *See Bujol*, 922 So. 2d at 1136. Liability under this subsection is imposed only when the defendant's undertaking was intended to supplant, not just supplement, another's duty. *See Bujol*, 922 So. 2d at 1136. Defendant's assumption of a duty must be to such an extent that "it has totally supplanted and taken over [another's] duty." *Bujol*, 922 So. 2d at 1148. Lastly, the "reliance" alternative in Subsection 324A(c) requires the harm be suffered because of reliance by the plaintiff or "the other" (the one who originally owed the duty) on defendant's undertaking to perform the duty. *See Bujol*, 922 So. 2d at 1136.

Petitioners maintain Amazon assumed and breached a duty to identify, remove, and warn customers about unsafe products on its marketplace, including the subject battery charger. Both parties point to evidence submitted on the motion for summary judgment in support of their respective arguments. The evidence consists of dozens of exhibits comprising over a thousand pages, including depositions, expert reports, tests, protocols, policies from Amazon, and other information.

According to plaintiffs, this evidence establishes Amazon employs multiple tools to scan customer reviews and other feedback for product listings to identify and prevent unsafe or non-compliant products from being listed. Each identified product is investigated, and, in some instances, Amazon requests testing documentation or other information about the product from the seller. Amazon may remove a product, immediately suspend or terminate the seller's privileges, and notify purchasers of the safety concerns. Although the subject four-battery charger did not have any safety-related reviews, a similar six-battery charger listed by the same seller had reviews identifying safety issues.

For the second step of the analysis, petitioners depend on the "reliance" element of Section 324A(c), contending Pickard relied on Amazon's assumption of the duty to identify, remove, or warn of unsafe products. Petitioners assert an

14

Amazon representative confirmed Amazon expects customers to rely on Amazon's use of these tools to prevent the listing of noncompliant products. Petitioners also rely on an affidavit signed by Pickard's daughter attesting he made an effort to purchase items from Amazon because it told customers products sold on its website were safe.

Amazon counters that while it uses scanning tools to identify and remove unsafe products, the evidence does not establish Amazon screens all products for safety before they are sold, that investigations will result in any particular outcome, that Amazon will remove products after certain triggering events, or that Amazon requires compliance documentation to list a product. The record, according to Amazon, establishes sellers are responsible for the safety of their products, and Amazon does not vet sellers' products before sale. Amazon's policies did not require compliance documentation before the subject product was sold. In short, Amazon maintains petitioner's description of Amazon's purported duty is not grounded in anything Amazon stated to Pickard or in statements about the product he bought. Amazon further argues petitioners mischaracterize the corporate representative's testimony, which concerned Amazon's seller registration process.

When a certified question is accepted, this court's role is to render a "judgment or opinion concerning . . . questions or propositions of Louisiana law." *See* La. S.Ct. Rule XII, §8; La. R.S. 72.1A. This court may only render a judgment or opinion concerning such questions or propositions of Louisiana law, not resolve factual issues. *Wightman v. Ameritas Life Ins. Corp.*, 22-0364 (La. 10/21/22), 351 So. 3d 690, 693. Any fact-finding responsibility is reserved to the federal court. *See* La. S.Ct. Rule XII, §8; La. R.S. 72.1A; *Wightman*, 351 So. 3d at 693. We will not speculate about "what circumstances" may trigger liability under Section 324A when the operator of an online marketplace voluntary adopts safety procedures. *Id.*

15

In response to the second question, we find Section 324A, as detailed in *Bujol* and herein, applies to determine if an operator of an online marketplace assumed a duty owed by a third-party seller and is liable for any damages caused by the breach of that duty.

## CONCLUSION

We answer the certified questions as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court upon the questions certified shall be sent by the clerk of this court under its seal to the United States Western District Court of Louisiana and to the parties.

**CERTIFIED QUESTIONS ANSWERED.**

SUPREME COURT OF LOUISIANA

No. 2023-CQ-1596

ANGELA PICKARD, ET AL.

VS.

AMAZON.COM, INC.

On Certified Question from the United States District Court for the Western
District of Louisiana Shreveport Division


**HUGHES, J.**, dissenting.

I respectfully dissent. The majority goes around the block to find that a possessor is liable as a seller if it is a manufacturer, or the alter ego of the owner, or a *de facto* manufacturer, yet does not comply with the parameters of its own analysis. To reach the desired result the law requires that such a possessor/seller/manufacturer control or influence the "design, construction, or quality" of the product.

The majority cites <u>Media Production Consultants, Inc. v. Mercedes Benz of North America, Inc.</u>, where a car distributor "inspected, adjusted, and prepared" the car for sale. The majority indicates that the operator of an online marketplace "can" perform "a similar role" and that the operator's unspecified "involvement" "can" form a "substantial and material part of the transaction".

Further, "if" the operator is the "alter-ego" of the manufacturer, it "should" bear any loss.

The majority concludes by holding that the operator here is a "seller" because at some point it had possession of the product and "controlled the process of the transaction and delivery" of the product.

"Process of the transaction and delivery" does not equal control or influence over the "design, construction, or quality" of the product, or even "inspection, adjustment, or preparation" of the product. The result is a reach and untenable.

I would respectfully decline to answer the second question as too broad. It invites an infinite number of speculative factual scenarios.

**SUPREME COURT OF LOUISIANA**

**No. 2023-CQ-01596**

**ANGELA PICKARD, ET AL.**

**VS.**

**AMAZON.COM, INC.**

On Certified Question from the United States District Court for the Western District of Louisiana Shreveport Division

**Genovese, J., dissents in part as follows:**

I dissent in part as to the majority opinion's finding that Amazon is a "seller." I do not find Amazon as a seller by any stretch of legal imagination. Finding Amazon as a seller redefines the definition of a seller not contemplated under our civil code and supporting jurisprudence.